[ *70 ]                    *STANTON vs. THOMAS.

Where a female is debauched in the house of a stranger, and he by writing under *seal* authorizes a party standing *in loco parentis* to sue *in his name* for the recovery of damages, and a suit is accordingly commenced and judgment recovered, after which the nominal plaintiff *acknowledges of record satisfaction* of the judgment, an action may be maintained by the party thus authorized to sue, against the nominal plaintiff for recovery of the amount of the judgment, and the suit may be brought in *assumpsit*, notwithstanding that the writing giving authority to sue is under *seal*.

THIS was an action of *assumpsit*, tried at the Tioga circuit in September, 1838, before the Hon. ROBERT MONELL, one of the circuit judges.

*Thomas* executed an instrument in writing under his hand and *seal*, whereby, after reciting that one James Lownsbury had, as was alleged and believed, debauched and gotten with child Polly Ferry, the daughter of the wife of *Stanton*, whilst she resided at the house of *Thomas;* and also reciting that Polly had since returned home to the house of *Stanton*, where she was likely to occasion him expense and trouble, *Thomas* authorized *Stanton* to prosecute Lownsbury in such form of action as he should see fit, in the name of him, *Thomas*, or otherwise, as might be deemed advisable: *Stanton* keeping *Thomas* harmless from all damages, costs and charges by means of such suit or suits. By virtue of this instrument, a suit was commenced and prosecuted by Stanton, in the name of Thomas against Lownsbury, for the seduction of Polly Ferry, and a judgment recovered for $300 damages; and after the recovery, Thomas *acknowledged of record satisfaction of the damages* so recovered. The plaintiff thereupon commenced an action of *assumpsit* against the defendant to recover of him the money thus acknowledged by him to have been received. The declaration contained several special counts, and also the *money counts*. The defendant pleaded the general

public use. The former acts upon communities and may be exerted in favor of any object which the legislature shall deem for the public benefit. A issue. On the trial of the cause, the above facts appeared, and the judge *nonsuited* the plaintiff on the following grounds : 1. That the cause of action against Lownsbury being in *tort*, was not the subject of assignment ; 2. That the instrument *executed by the defendant did not  [ *71 ] amount to an assignment ; and 3. That it was void for champerty. The plaintiff moves for a new trial.

*M. T. Reynolds*, for the plaintiff.

*S. Stevens*, for the defendant.

*By the Court*, NELSON, Ch. J. The only doubt I have entertained in the consideration of this case is, whether the suit should not have been founded upon the implied covenant growing out of the power of attorney. I agree to the opinion expressed by my brother Cowen, when this instrument was before him heretofore, 19 *Wendell*, 73, that upon fair construction it is a power coupled with an interest, and carries by implication the beneficial right of the cause of action, and was so intended by the parties. The reasons assigned for this view in the opinion referred to are full and entirely satisfactory. But after the fullest examination and reflection I have been able to bestow upon it, I have come to the conclusion that *assumpsit* will lie, and perhaps that action only.

It is a familiar law, at this day, that the rights of the assignee of a chose in action will be recognized in a court of law, and protected ; he stands in the place of the assignor for all purposes except the form of the remedy ; and if money be paid the latter, it is received to the use of the former, for which an action for money had and received will lie ; and ordinarily, if the money is paid after notice, it will be in fraud of the assignee, and ineffectual to discharge the debtor. There are interests, however, so exclusively personal and contingent, as to be incapable of transfer by any mode of assurance, and this was deemed to fall within that class of cases in the decision already referred to, and therefore not protected by notice. But though the assignment in these cases is held to be ineffectual to transfer any interest in the subject matter, the object of the parties, if lawful, will be attained in another way ; it will operate as a covenant or contract between them, and the duty enforced by *reason of that obligation. This  [ *72 ] principle has been repeatedly asserted and acted upon, 19 *Wendell*, 73 ; most of the authorities are referred to there, and I need not go over them. *See also Viner, tit. Assign. B. and tit. Covenant, C. pl.* 20. 2 *Black. R.* 820.

I have said the serious doubt in the case is, whether the action should not

have been founded upon the implied covenant, inasmuch as the instrument is under seal out of which the rights of the plaintiff have accrued. Such was the remedy in the cases above cited—the word *assign* being construed to imply a covenant to perform the thing contracted for, or respond in damages. If that term had been used in this instrument, I should perhaps have felt bound by the authorities ; that remedy being complete, and of a higher nature, might have presented a serious objection to the action of assumpsit. I am not, however, prepared to admit that even then, where the demand is for money withheld, that assumpsit might not lie. But it is not important to pursue the distinction. Here the term is not to be found, nor any other, from which covenant can be implied upon any authority that has come under my notice.

Is the plaintiff then without remedy ? I think not. The money belongs to the assignee in equity and conscience, and is wrongfully withheld. The action of covenant given in the cases referred to proves this. The omission of technical phraseology does not affect the nature of the contract : any language evincing the object and intent of the parties is all that is essential. The right to the money is still as perfect as if covenant could have been sustained had the instrument been without seal. No question on this point could have been raised. Assumpsit would have been the only appropriate remedy. The case, I think, should now be regarded in that light. The omission of technical language affects the remedy, not the right to the money. It belongs to the plaintiff ; has been received in fraud of his rights, and is held against duty and conscience. The proposition is a general one, that where the defendant receives money belonging to the plaintiff, or where in equity and conscience he should not withhold it from him, as-

[ *73 ] sumpsit will *lie as for money had and received to the plaintiff's use ; the law implies a contract in favor of the party entitled to it. 2 *Saund. Pl. and Ev.* 670, and cases.

The principle contained in *Burnett* v. *Lynch*, 5 *Barn. & Cress.* 589, is somewhat applicable here. There a lessee assigned by deed poll to the defendant his lease, subject to the payment of rent, and performance of covenants. He had been sued by the lessor for neglect of repairs while the assignee was in possession and mulcted in damages. This action was brought for that neglect of duty and to indemnify himself against that recovery. The action was case, but all the judges held that assumpsit would have been appropriate. Covenant would not lie because the assignee had not signed. They grounded the right of action upon the duty of the defendant to make the necessary repairs, arising from the implied contract in the assignment, for the breach of which duty the plaintiff had been damnified : taking the assignment subject to the covenants in the lease, implied a duty on his part to perform them. The duty is equally clear in this case to pay

over the fruits of the recovery to the plaintiff. Such is the effect of the contract, and which is lawful and binding within the cases and principles already referred to. I am of opinion, therefore, the action may be sustained upon the common counts for money had and received.

I have not deemed it important to consider the point of maintenance and champerty which was urged, because the authorities upon which the right to recover is believed to be sustained shew that the assignment is lawful, and operative by way of contract, though not as passing any interest in the technical sense of the term. The right rests wholly in contract.

New trial granted, costs to abide event.

* * *

\*THE SARATOGA & SCHENECTADY RAIL ROAD COMPANY *vs.* ROW [ \*74 ] and TREDWAY.

Where a contract is made for work to be done at a stipulated price, and it is discovered before the work is commenced, that a *misrepresentation* has been made in respect to its value, the party engaging to do the work may repudiate the contract; if he does not do so, but goes on and performs it, he can demand no more than the contract price.

THIS was an action of *replevin* for a quantity of coke, tried at the Schenectady circuit, in March, 1838, before the Hon. JOHN P. CUSHMAN, one of the circuit judges.

The plaintiffs, by their agent *John Costigan*, purchased 50 chaldrons of coke in the city of New-York, and at that place made a written contract on the 30th June, 1836, by which *Teall & Co.* agreed to transport and deliver the coke at the rate of $1,50 per chaldron, which price was to include the expense of transferring the coke from the cellar of the store, 125 Washington-street, N. Y. to the boat, and unlading the same at Schenectady. A boat load of the coke, amounting to about 35 to 40 chaldrons, arrived at Schenectady on the twelfth day after the date of the contract. The defendant, *Row*, was the captain of the boat, and refused to deliver the coke to the plaintiffs, except upon the payment of charges amounting to a considerable sum beyond the contract price. The plaintiffs offered to pay, at the contract price, and demanded the property. *Row* stored the coke with the defendant, *Tredway*, after he had been fully informed of the contract, and of the tender and demand. The plaintiffs thereupon replevied the property.

The defence set up by *Teall & Co.* for the defendants, was, that the cellar of 125 Washington street was further from the water than *Costigan* had represented at the time the contract was made, in consequence of which the whole of the coke was not shipped—the boat being obliged to leave before