THE PEOPLE OF THE STATE OF NEW YORK, Respondent and Appellant, *v.* ASHBEL P. FITCH, as Comptroller of the City and County of New York, Appellant and Respondent.

1. CARE OF INDIGENT INSANE — NEW YORK COUNTY — LIABILITY FOR STATE TAX. The county of New York is not rendered exempt from raising and paying its quota of the state tax imposed by chapter 214, Laws of 1893, as amended by chapter 565, Laws of 1893, for the care of the insane poor by the state under chapter 126, Laws of 1890, by the fact that that county had continued to care for its own insane poor and had not elected

to avail itself of the terms of the act of 1890, which provided for the transfer to the state of the care and support of the pauper insane in all the counties except New York and two others, and also provided that the excepted counties might avail themselves of its provisions.

2. THE TAXING POWER. The taxing power of the legislature is practically absolute, except as restrained by constitutional limitations, and cannot be interfered with by the judicial branch of the government.

3. NON-PAYMENT OF STATE TAX — INTEREST. In a proceeding by the state for a mandamus to compel the comptroller of the city and county of New York to raise and pay that county's quota of the state tax imposed by the acts of 1893 (Chap. 214, as amended by chap. 565) for the care by the state of the insane poor under chapter 126, Laws of 1890, *held,* that the municipality was chargeable with interest at the legal rate from April 15, 1894, upon one-half of its share of the tax, and from May 15, 1894, upon the other half, until payment — those being the dates on which moieties of the state tax were then declared by the County Law (Laws of 1892, chap. 686, § 141, sub. 5) to be due from the different counties, and that chapter 427, Laws of 1855, was not applicable to the case.

*People* v. *Fitch* (89 Hun, 310), modified.

(Argued December 11, 1895; decided December 19, 1895.)

CROSS-APPEALS from order of the General Term of the Supreme Court in the third judicial department, made May 14, 1895, and from the judgment entered thereon, which modified and affirmed as modified a judgment in favor of plaintiff entered upon a verdict directed by the court, and directed the issuance of a peremptory mandamus.

The facts, so far as material, are stated in the opinion.

*Francis M. Scott* and *James M. Ward* for defendant. The acts, chapter 126, Laws 1890, and chapter 565, Laws 1893, are in *pari materia*, and are, therefore, to be read and construed together as if they constituted part of the same statute and were enacted at the same time. (*Smith* v. *People,* 47 N. Y. 330–339; *Brick* v. *Gannar,* 36 Hun, 52.) The construction claimed for the act of 1893, by the plaintiff, would lead to manifest injustice, and would violate the well-established rule of construction which requires the court, whenever possible, to avoid a reading of a statute which would work an absurdity or injustice. (*People* v. *Davenport,*

91 N. Y. 575; Potter's Dwarris on Stat. 120–146; *Mayor, etc.*, v. *M. R. Co.*, 143 N. Y. 1, 37; *L. S. & M. S. R. Co.* v. *Roach*, 80 N. Y. 339.) The court at General Term was right in its modification of so much of this order and judgment as related to interest. (Laws of 1873, chap. 760, § 2; Laws of 1855, chap. 427, §§ 11, 12.)

*T. E. Hancock* and *John W. Hogan* for plaintiff. Mandamus is the proper remedy to enforce payment of the tax due from the city and county of New York. (Laws of 1882, chap. 410, § 153; *Mayor* v. *Davenport*, 92 N. Y. 604.) The uncontroverted facts established on the trial by plaintiff justified the direction by the court of a verdict in favor of plaintiff. (*People* v. *Myers*, 66 Hun, 167; 138 N. Y. 590.) The statutes of 1893 imposed a tax upon the property, real and personal, in the city and county of New York, and the enactment of the several laws was a lawful exercise of legislative powers. (Laws of 1890, chap. 126; Cooley's Const. Lim. [6th ed.] 413; *People ex rel.* v. *County of Queens*, 47 N. Y. S. R. 367; *Genet* v. *City of Brooklyn*, 99 N. Y. 296; *People ex rel.* v. *Butler*, 147 N. Y. 164; Suth. on Stat. Cons. 371; *Goodrich* v. *Russell*, 42 N. Y. 177; *H. I. Co.* v. *Alger*, 54 N. Y. 173; *Karst* v. *Gane*, 136 N. Y. 321; *McClusky* v. *Cromwell*, 11 N. Y. 593; *People ex rel.* v. *Wemple*, 115 N. Y. 307; *In re Middletown*, 82 N. Y. 196; *Wallis* v. *Harris*, 20 Wend. 555; *Rosenplaenter* v. *Roessle*, 54 N. Y. 262; 43 N. Y. 539; *R. Hospital* v. *Mayor, etc.*, 84 N. Y. 112; *Hassan* v. *City of Rochester*, 67 N. Y. 528; *People* v. *Myers*, 126 N. Y. 639; Laws of 1890, chap. 84, pp. 249, 250; Laws of 1890, chap. 295, p. 569; Laws of 1890, chap. 435; Laws of 1891, chap. 302, pp. 597, 598; Laws of 1891, chap. 335; Laws of 1891, chap. 91; Laws of 1892, chap. 613; Laws of 1892, chap. 356, p. 743; *Gordon* v. *Cornes*, 47 N. Y. 608; *Thomas* v. *Leland*, 24 Wend. 65; *People* v. *Mayor, etc.*, 4 N. Y. 437; *Pumpelly* v. *Vil. of Owego*, 45 How. Pr. 219; Laws of 1894, chap. 383; Laws of 1895, chap.

10

693.) The plaintiff was not called upon to establish the various acts of the state commission in lunacy or the comptroller. (*People* v. *Kemmler*, 119 N. Y. 569, 577, 578; *Waterloo* v. *Shanahan*, 128 N. Y. 345.) The failure of the board of estimate and apportionment to include in the ordinance for the state tax the amount for the state care of the insane does not excuse the payment of the tax by defendant. (*People* v. *Myers*, 58 Hun, 218; *People ex rel.* v. *Davenport*, 92 N. Y. 604; *In re McMahon*, 102 N. Y. 176; *In re N. Y. E. E. School*, 31 N. Y. 574; *McMillan* v. *Anderson*, 95 U. S. 37; *People* v. *Conner*, 59 Hun, 299; 128 N. Y. 345.) The General Term erred in reducing the amount of the judgment. Plaintiff is entitled to interest as allowed upon the trial. (Laws of 1892, chap. 686, § 141; Laws of 1895, chap. 558; Laws of 1882, chap. 410, § 153; *People* v. *New York*, 5 Cow. 331; *People* v. *Myers*, 138 N. Y. 590.)

BARTLETT, J. In 1890 the legislature passed an act for the care of the pauper and indigent insane in the counties of this state, except New York, Kings and Monroe counties, and provided that the excepted counties might avail themselves of the provisions of the act (Chapter 126, Laws of 1890). The act also states that after certain accommodations were provided and steps taken the pauper and indigent insane should be regarded and known as the wards of the state, and be wholly supported by the state; all incidental expenses rendered necessary by the act are also made a charge upon the state.

In 1893 the legislature passed an act to appropriate money for the care, etc., of the insane poor under the provisions of chapter 126 of the Laws of 1890 (Chap. 214, Laws of 1893, amended by chap. 565, Laws of 1893). The county of New York had not elected to be included in the provisions of the act of 1890.

The act of 1893 imposed for the fiscal year, beginning on the first day of October, 1893, on each dollar of taxable real and personal property of the state, a tax of one-third of a mill, the amount of the tax being $1,346,019.64.

The duly constituted authorities of the county of New York insisted that the county was not liable to pay its share of this tax, and refused to make the necessary appropriation.

Thereupon the state sued the comptroller of the city and county of New York and recovered judgment for the sum due from the county with interest, amounting to $714,556.72, and the General Term affirmed the judgment, except it laid down a different rule than that adopted by the trial court for the computation of interest, making a difference of nearly $9,000 in favor of the defendant.

There are cross-appeals — the defendant appeals from the order and judgment of the General Term, and the plaintiff appeals from so much of the same as modified the judgment originally entered.

The learned counsel to the corporation of the city and county of New York has presented to this court with great earnest-ness and ability the legal considerations which, in his judg-ment, should prevent the consummation of a scheme of taxation against the city and county of New York which he insists is manifestly unjust and oppressive.

The outline of the argument is, that as the act of 1890 (§ 13) provides that the first twelve sections thereof shall not apply to the county of New York, the scheme which it formulates for the care of the insane poor at the expense of the state has no application to that county ; that the acts of 1890 and 1893 are *in pari materia* and to be read and con-strued together, as if they constituted a part of the same statute and were enacted at the same time ; that it is a prin-ciple of universal authority which requires the courts to limit and restrict the operation of a statute when its language, if applied in a literal sense, would lead to an absurdity or mani-fest injustice ; that the county of New York had invested up to the first day of January, 1893, in providing accommoda-tions for its own pauper insane the sum of $9,875,000.00, and had actually expended for their care and maintenance in the year of 1893 the sum of $757,399.09 ; that if the position assumed by the state in this action is sustained the county of New York

will be compelled to pay about forty-five per cent of the cost of supporting the insane of other counties while caring for its own insane in addition, at an expenditure already indicated, which the state does not share ; that the effect of this recovery is to make the county of New York pay about sixty-five per cent of the total amount expended for the care of the insane poor in the state.

It needs no argument to demonstrate the injustice of this situation, but in the view we entertain of the law as applicable to this case relief must come from the legislature.

If for good and sufficient reasons the county of New York cannot profitably avail itself of the provisions of the act of 1890, it must be assumed that the legislature, on having its attention called to the fact, will see to it that the burdens of taxation are properly equalized.

We find in the act of 1893 a plain declaration of the legislative will about which there is no doubt or uncertainty, and in construing which it is neither necessary nor proper to invoke any of the well-known rules of construction.

The act in express terms imposes a tax of one-third of a mill " on each dollar of taxable real and personal property of this state " for the care of the insane poor under the act of 1890.

We do not feel at liberty to disregard this plain and unequivocal expression of the legislative purpose, and to defeat its obvious intent by adopting any of the principles of construction which have been presented to us on the argument and in the appellant's brief.

It is quite inconceivable that the legislature, if it had intended to exempt the county of New York from taxation under the act of 1893, should have employed the language that it did.

The total taxable property, real and personal, in the entire state, at the rate named, produces the precise sum that is appropriated.

It might well be urged on behalf of the state that the act in question, and substantially similar acts in 1894 and 1895, are

a practical construction by the legislature of the act of 1890 against the contention of defendant.'

We fully recognize the rule as laid down in *Smith* v. *The People* (47 N. Y. 330) as to construing statutes *in pari materia,* and this court applied it in the recent case of *People ex rel.* v. *Butler* (147 N. Y. 164).

We have here no such situation as was presented in either of the cases cited; in the earlier case it could not be assumed that the legislature intended to invalidate the proceedings in the principal criminal courts in the city of New York for two years and work a general jail delivery, nor in the latter case was it to be presumed that the legislature failed to accomplish the only object it had in view, to wit, making the clerk of Onondaga county a salaried officer.

The vice of the appellant's argument lies in the assumption that beyond all question the act of 1890 has no application to the county of New York, and clearly exempts it from the burden of taxation imposed by its provisions.

The act consists of twenty-one sections, and section thirteen provides that the *foregoing* provisions shall not apply to the three counties named.

It is very cogently argued by the learned attorney-general that the act of 1890 had two objects in view, viz. : To regulate the custody and control of the insane poor outside of the exempted counties, and to make the expense a charge upon the state at large; that the county of New York was exempted from the former, but not from the latter. It is, therefore, by no means certain that if the acts of 1890 and 1893 were read and construed together the position of defendant could be maintained. We do not, however, pass upon this question for the reason we have already stated, that the act of 1893 is too plain in language and intent to admit of doubt.

The taxing power vested in the legislature is practically absolute, except as restrained by constitutional limitations. (*Genet* v. *The City of Brooklyn,* 99 N. Y. 296–306.) Judge ANDREWS, writing the opinion of the court, says: "The purpose for which a tax shall be levied; the extent of taxation;

the apportionment of the tax; upon what property or class of persons the tax shall operate; whether the tax shall be general or limited to a particular locality, and in the latter case the fixing of a distinct assessment; the method of collection, and whether the tax shall be a charge upon both person and property, or only on the land, are matters within the discretion of the legislature, and in respect to which its determination is final. * * * There is no constitutional guaranty that taxation shall be just and equal, although a law plainly departing from the principle of equity in the distribution of public burdens would be justly obnoxious as contrary to natural equity, and as practical confiscation, but the remedy must ordinarily be found in an appeal to the justice of the legislature."

In *Waller* v. *Harris* (20 Wend. 562) Judge BRONSON said: "Courts cannot correct what they may deem either excesses or omissions in legislation, nor relieve against the occasionally harsh operation of statutory provisions without the danger of doing vastly more mischief than good."

In *The Providence Bank* v. *Billings* (4 Peters, 514, 561, 563) Chief Justice MARSHALL said: "The power of legislation and consequently of taxation operates upon all the persons and property belonging to the body politic. This is an original principle which has its foundation in society itself. It is granted by all for all. * * * However absolute the right of an individual may be, it is still in the nature of that right that it must bear a portion of the public burthens; and that portion must be determined by the legislature. The vital power may be abused; * * * but the interest, wisdom and justice of the legislative body, and its relations with its constituents, furnish the only security against unjust and excessive taxation, as well as against unwise legislation."

In *M'Culloch* v. *State of Maryland* (4 Wheat. 328) Chief Justice MARSHALL said, referring to this absolute power of taxation: "It is admitted that the power of taxing the people and their property is essential to the very existence of government, and may be legitimately exercised on the objects to

which it is applicable, to the utmost extent to which the government may choose to carry it. The only security against the abuse of this power is found in the structure of the government itself. In imposing a tax the legislature acts upon its constituents. This is in general a sufficient security against erroneous and oppressive taxation."

In *Thomas* v. *Leland* (24 Wend. 69) Mr. Justice Cowen said: "I admit that the power of taxation may be abused; but its exercise cannot be judicially restrained so long as it is referable to the taxing power. The only check lies at present in that power being usually exerted on considerable bodies of men who possess a control in a greater or less degree over its agents."

The recovery in this case rests upon these principles. The legislature is omnipotent within the domain of taxation, subject only to the restraints imposed by the Constitution; the judicial branch of the government cannot interfere. The court in this instance is powerless to protect the defendant in a situation where the taxing power has imposed upon the county of New York a burden of taxation which, unexplained, seems unjust and oppressive and very much heavier in proportion than that resting upon the other counties of the state.

It may be remarked that the officers of the state, in securing this judgment against the defendant, had no discretion in the premises, but were required by their plain duty to carry out the will of the legislature as expressed in the act of 1893.

It only remains for us to consider the correctness of the modification by the General Term of the judgment entered at the Circuit in the matter of interest.

By the County Law (Ch. 686, Laws of 1892, § 141, sub. 5) one-half of the state tax is due from the different counties on the fifteenth day of April and the other half on the fifteenth day of May in each year, and in case of default the comptroller is authorized to charge on all sums withheld a rate of interest not exceeding ten per cent, from the first day of April in each year, as shall be sufficient to repay all expenditures incurred by the state in borrowing money.

At the trial, the counsel for the state did not insist upon the interest penalty, but asked that the legal rate should be paid on all sums remaining due and unpaid. The county of New York was charged with interest on the amount due April 15th, 1894, from that date until the amount due on that day was paid in full and was credited with interest upon the various payments made from the date of each payment until the amount due was paid.

A similar mode of computing interest was adopted as to the amount due May 15th, 1894.

We think the general rule that a debtor who fails to pay his debt when due shall be charged with interest from that date (*People* v. *County of New York*, 5 Cow. 331–334) was properly applied to this case.

This court has also recently held in a suit between the state and the comptroller of the city of New York that the municipality was properly charged with interest on the unpaid taxes from the time they should have been paid into the state treasury. (*People* v. *Myers*, 138 N. Y. 590.)

The General Term held that interest should only have been charged on the balance remaining unpaid at the expiration of thirty days from the first of May, 1894, and cited chap. 427, Laws of 1855, as an authority. The act cited does not apply to this case; and the modification of the judgment was unauthorized as matter of law.

The judgment directed at Circuit should be reinstated and affirmed, and the order and judgment of the General Term modifying it is to that extent reversed, with costs.

All concur, except GRAY, J., who dissents for the reason that by the act of 1890 the city and county of New York was excepted from its provisions, and the act of 1893 made an appropriation of moneys under the provisions of the former act.

Judgment accordingly.