## THE PEOPLE *ex rel.* M. G. COBB *v.* THE BOARD OF SUPERVISORS OF SAN JOAQUIN COUNTY.

BILLS FOR EXPENSES OF VOLUNTEER COMPANIES.—It is the duty of the Boards of Supervisors of the respective counties in this State to audit and allow the bills of organized volunteer companies for rent of armory, etc., and to direct a warrant to

be issued therefor, payable out of the county funds in the hands of the County Treasurer; and if they refuse to issue such warrant in a proper case, a writ of mandate will be issued commanding them to do so.

EXPENSES FOR VOLUNTEER COMPANIES PAID BY COUNTIES.—The sums paid by counties for expenses of volunteer companies are to be allowed and credited to such counties by the State Treasurer, in his annual settlements with the County Treasurers.

THIS was an original proceeding commenced in the Supreme Court.

The other facts are stated in the opinion of the Court.

*M. G. Cobb*, in *pro per.*, for Relator.

*John C. Byers*, for the Defendant.

By the Court, SAWYER, J.

The relators are members of a military company in San Joaquin County, organized under the Act of 1862, in relation to the militia of this State, as amended by the Act of 1863. In pursuance of the provisions of the Act, the said military company, with the approbation of the Board of Supervisors, rented a room for a drill room and armory, and employed an armorer to take charge of the same. On the 6th of February, 1865, the rent of the building, wages of armorer and other necessary incidental expenses unpaid, had accumulated to the amount of seven hundred and fifty dollars. A bill for the amount was duly presented to the Board of Supervisors of said county, and the said Board requested by said company to allow the same, and direct it to be paid out of the funds of said county. The Board of Supervisors allowed said bill, and ordered a warrant to be issued therefor, payable out of the general State funds in the hands of the County Treasurer of said County of San Joaquin; but refused to order the same to be made payable out of the county funds of said county. At the time mentioned there were no funds belonging to the State in the hands of the County Treasurer. The relators now ask for a peremptory mandate directing the said Board of Supervisors to order the said warrant to be issued payable out of

the county funds of said San Joaquin County. The question therefore is, whether the relators are entitled, under the law, to have the said sum paid out of funds belonging to the county, or whether they are confined to such funds as may be in the County Treasurer's hands belonging to the State—whether such State funds were raised by general taxation, or by a poll tax for military purposes.

The determination of the question depends upon the construction to be given to section twenty-two of the Act referred to, which is as follows, to wit:

" SEC. 22.  It shall be the duty of the Board of Supervisors of each county in which there shall be one or more organized volunteer companies, upon application of the Captain or commanding officer of the same, to provide for each company in said county an armory, safe and suitable for the drill of squads in the School of the Soldier, and an armorer to take charge of the same; and it shall also be the duty of the Board of Supervisors of each county in which there shall be one or more organized regiments, upon application of the Colonel or commanding officer of the same, to provide for each regiment in said county a drill room, suitable for skeleton regimental drill; and said Board shall also, at each of its sessions, audit and allow, and cause to be paid, the necessary incidental expenses of said company or regiment previously incurred; *provided*, that the total amount for all the purposes above mentioned shall not exceed fifty dollars per month for each company, and one hundred dollars per month for each regiment; and for light batteries, not less than two hundred and fifty dollars per month; and, *provided*, further, that at the annual settlement of the several Treasurers of such counties with the State Treasurer, the amount so paid, or caused to be paid by the several Boards of Supervisors thereof, shall be allowed and credited to such counties." (Laws of 1863, p. 442.)

It will be seen that this section makes it " the duty of the Board of Supervisors of each county in which there shall be

one or more organized volunteer companies * * * to pro-
vide for each company in said county an armory * * * and
an armorer to take charge of the same;" and that " said Board
shall also, at each of its sessions, audit and allow and cause
to be paid the necessary incidental expenses of said company
or regiment, previously incurred." There is no limitation to
any particular fund out of which these expenses are to be
paid. No fund is specified in this or any other section. Nor
does the Act appear to us to give the Board of Supervisors
authority to deal with the funds of the State, as such. It
provides, however, that, " at the annual settlement of the
several Treasurers of such counties with the State Treasurer,
the amounts so paid, or caused to be paid, by the several
Boards of Supervisors thereof shall be allowed and credited
to such counties." We think the only reasonable construction
is that these expenses are primarily made a charge upon the
county, and the charges paid are to be refunded by an allow-
ance and credit in favor of such counties to be made by the
State Treasurer in his annual settlements with the respective
County Treasurers. The State fixes the rate of taxation for
State purposes, which are assessed and collected at the same
time with county taxes, and through the same officers. They
pass through the hands of the County Treasurer, and are to
be paid by him into the State Treasury at certain designated
periods. The Board of Supervisors have no direct control
over the funds of the State while in the hands of the County
Treasurer, nor at any other stage of the proceedings. They
can neither increase or diminish the amount except so far as it
is incidentally affected by its acts as a Board of Equalization.
There may, or may not be, at any given time, funds of the
State in the hands of the County Treasurers; but whether
there be or not does not depend upon the acts of the Boards
of Supervisors. But the Board do have the management, con-
trol and disposition of the funds of the county within the limits
prescribed by law, and can, within certain prescribed limits,
increase or diminish the amount of its revenues. And it is out
of these revenues, which are under the control of the Board of

Supervisors, that they must make all appropriations for expenditures which are incurred under the exclusive direction of the Board, unless it is clearly manifest that their powers are extended to the funds of the State. It may be that it was supposed that, to make the county primarily liable for expenses which are incurred under the direction of the Board, would stimulate that body to practice more rigid economy. However that may be, we are of the opinion that such liability is directly thrown upon the county in the first instance, and that the relators are entitled to a peremptory mandate. And it is so ordered.