In the Matter of the Application of CHARLES E. BRYANT, Respondent, for a Writ of Mandamus, *v.* GEORGE W. PALMER, as Comptroller of the City of Brooklyn, Appellant.

Matter of JOHN J. MOOG, Respondent, *v.* SAME, Appellant.

Matter of CHARLES GOEDEL, Respondent, *v.* SAME, Appellant.

1. NATIONAL GUARD — ARMORERS AND JANITORS OF ARMORIES. Armorers and janitors of armories of the National Guard, appointed under the provisions of the Military Code, are in the military, and not in the civil, service of the state.

2. CONSTITUTION, ART. 11, § 3 — MAINTENANCE OF MILITIA — ARMORIES. The provision of the Constitution of 1894 (Art. 11, § 3), that "it shall be the duty of the legislature at each session to make sufficient appropriations for the maintenance" of the militia, was not intended to make the entire maintenance of the militia payable out of the state treasury, and does not have the effect of prohibiting the enactment of general laws imposing upon localities the expense of maintaining armories within their jurisdiction.

3. COMPENSATION OF ARMORERS AND JANITORS A COUNTY CHARGE. The provision of section 179 of the Military Code, as amended by chapter 853, Laws of 1896, declaring that the compensation of employees in armories, including armorers and janitors, shall be a county charge upon the county in which the armory is situated, is not repugnant to the Constitution.

*Matter of Goedel* v. *Palmer*, 15 App. Div. 86, affirmed.

(Submitted March 26, 1897; decided April 20, 1897.)

APPEALS by the comptroller of the city of Brooklyn from orders of the Appellate Division of the Supreme Court in the second judicial department, entered March 17, 1897, reversing the orders of the Special Term in three cases, and directing the issue of peremptory writs of mandamus requiring the comptroller to pay the relators their wages as armorers and janitor of armories in the city of Brooklyn.

The questions involved are similar and the appeals were argued together.

The facts, so far as material, are stated in the opinion.

*Alfred E. Mudge* and *Joseph A. Burr*, for appellant. By the ratification of the amended Constitution in 1894, the entire expense of maintaining the National Guard was made a gen-

eral state charge. (Const. N. Y. art. 11, § 3; L. 1893, ch. 559, § 177; L. 1896, ch. 853, § 177; *People* v. *N. Y. C. R. R. Co.*, 24 N. Y. 485; *Settle* v. *Van Evrea*, 49 N. Y. 280; *People* v. *Fancher*, 50 N. Y. 288; *People ex rel.* v. *Wemple*, 125 N. Y. 485.)

*Edward M. Grout, Stillman F. Kneeland* and *William W. Ladd, Jr.*, for respondents. The relators are in the military and not in the civil service of the state. (L. 1896, ch. 853, §§ 176, 177, 260, 261; *In re Flint*, L. R. [15 Q. B. Div.] 488.) The laws which make the city (as successor to the county) liable for the relators' pay are constitutional. (L. 1893, ch. 559; L. 1896, ch. 853; L. 1862, ch. 477, §§ 120, 126, 127, 169; L. 1870, chap. 80, §§ 120, 121, 124, 125; L. 1883, ch. 299, §§ 60, 61, 64; *Coutant* v. *People*, 11 Wend. 513; *Clark* v. *People*, 26 Wend. 602; *People* v. *N. Y. C. R. R. Co.*, 24 N. Y. 496; *People* v. *Purdy*, 2 Hill, 37; *In re Keymer*, 148 N. Y. 224; *People ex rel.* v. *Roberts*, 148 N. Y. 369; Cooley's Const. Lim. [6th ed.] 69; *People ex rel.* v. *Potter*, 47 N. Y. 375; *G. E. R. R. Co.* v. *Anderson*, 3 Abb. [N. C.] 443; *People ex rel.* v. *Draper*, 15 N. Y. 532; *People ex rel.* v. *Murray*, 149 N. Y. 367; *Woodhull* v. *Mayor, etc.*, 150 N. Y. 450.)

Bartlett, J. The relators have been refused payment of their wages on the ground that the county of Kings, by virtue of the provisions of the Constitution of 1894, is no longer liable therefor, and that the claims must be paid out of the state treasury. (Constitution, art. XI, § 3.)

The facts are not disputed. Relator Goedel is the janitor of Troop C. The armory occupied by Troop C is the property of the state, but since 1875 has been in the possession of the county of Kings for military uses.

Relator Moog is the armorer of the Third Battery and the relator Bryant holds a like position in the Twenty-third Regiment.

The Third Battery armory is owned by the county of Kings, and the Twenty-third Regiment armory is the property of the

state of New York. The Special Term held that the relators were in the military, and not the civil service, but that their wages were payable by the state and not the county of Kings.

The Appellate Division affirmed the former position and reversed as to the latter.

The appellant on this appeal does not argue that the relators are not in the military service.

We are of opinion that the court below has properly decided this point.

The single question is presented whether section 179 of the Military Code, as amended in 1896 (Laws 1896, ch. 853, vol. 1, p. 774), is in violation of art. XI, section 3, of the Constitution, which reads as follows, viz. :

" The militia shall be organized and divided into such land and naval, and active and reserve forces, as the legislature may deem proper, provided, however, that there shall be maintained at all times a force of not less than ten thousand enlisted men, fully uniformed, armed, equipped, disciplined and ready for active service. And it shall be the duty of the legislature at each session to make sufficient appropriations for the maintenance thereof."

Section 179 of the Military Code, as amended in 1896, provides that the persons appointed under the provisions of the two preceding sections shall receive certain compensation, which is to be certified by the commanding officer, and " shall be paid semi-monthly upon the certificate of such officer, and shall be a county charge upon the county in which such armory or arsenal is situated, and shall be levied, collected and paid in the same manner as other county charges are levied, collected and paid."

The two preceding sections referred to in section 179 deal with the appointment of armorers, janitors, engineers and laborers.

As the law stood before the Constitution of 1894 (Ch. 559, Laws of 1893, § 177) the wages of these appointees were a county charge.

The appellant contends that while it was the policy of the

state prior to January 1st, 1895, to impose a very large part of the expense of maintaining the National Guard of the state of New York upon the various counties (Report of the Adjt.-Gen. for 1845, Assembly Doc. No. 6, 1846, p. 13; Laws of 1862, ch. 477, §§ 120, 126, 127, 169; Laws of 1870, ch. 80, §§ 120, 121, 124, 125; Laws of 1883, ch. 299, §§ 60, 61, 64; Laws of 1893, ch. 539, § 177), that by the ratification of the amended Constitution in 1894 a new departure was taken in this respect, and the entire expense of the militia was made a general state charge.

The portion of the new Constitution already quoted, which is supposed to have worked this radical change in policy, reads : " And it shall be the duty of the Legislature at each session to make sufficient appropriations for the maintenance thereof."

It is argued by the appellant that these are words of limitation on the power of the legislature, and that the constitutional command making it obligatory at " each session " to vote " sufficient " appropriations for the maintenance of the militia is to be construed as a prohibition against enacting any general laws imposing upon counties and large cities the expense of maintaining armories within their jurisdiction.

The respondent argues that the framers of the Constitution had no such object in view; that in providing for a force of not less than 10,000 men existing law was followed, and that their intention may be looked for in the proceedings of the convention.

It was the obvious purpose of the convention, as disclosed by the debates, to provide for a naval as well as a land force of militia that could not be reduced below a minimum number specified, and to impose upon the legislature the duty at each session to make sufficient appropriations for its maintenance.

In other words, the existence and maintenance of the National Guard were not to depend upon the legislative will, but were rendered permanent and certain by a provision of the fundamental law.

It would be a strained and unnatural construction to hold that the plain, simple language of this constitutional amendment was intended to reverse the wise policy of the state that has been acted upon for fifty years, and which is founded on considerations approved by the law-making power during that entire period.

It is only reasonable that those great centers of population that are subject to the dangers of riot and disorder, and are liable to the citizen for property lost in consequence, should have a large number of the armories located within their limits for proper protection, and it is but just that by reason of these great advantages enjoyed certain counties should pay, as they do, a sum estimated to be in excess of half a million dollars a year of the aggregate sum necessary to maintain the militia.

It seems to us very clear that if the constitutional convention had intended to do away with this system of local assessment, based upon benefits enjoyed, and to make the entire maintenance of the militia payable out of the state treasury, it would have employed apt language stating such intention in direct terms, requiring no construction and not open to doubtful interpretation.

The command of the Constitution that the legislature, at each session, shall make a " sufficient " appropriation was framed with knowledge of the fact that the amounts contributed annually by certain counties left a deficit varying in amount each year in the aggregate sum necessary for maintenance, hence the provision that the annual appropriation should be sufficient. It is the duty of the legislature to ascertain at each session the amount of this deficiency and appropriate from the state treasury a sum sufficient to cover it.

What we have already said would seem to be an answer to the suggestion of the appellant that the National Guard is a state institution, intended for the protection of the people at large, and that there is no reason in justice or equity why one locality should pay more in proportion for its maintenance than another.

1897.] People ex rel. Manhattan R. Co. v. Barker. 417

N. Y. Rep.] Statement of case.

The fact is that the militia of the state does not benefit all localities alike, and the legislation making a part of its maintenance a local charge is the legitimate exercise of the power of taxation vested in the legislature.

The fact that there may not be exact equality of taxation is not a ground for judicial interference so long as the legislature acts within constitutional limitations. (*Genet* v. *City of Brooklyn*, 99 N. Y. 296, 306; *People* v. *Fitch*, 148 N. Y. 71, 77.)

There was no abuse that the constitutional convention sought to deal with in this connection, and we think its intention in enacting the third section of article XI was confined to the object already pointed out.

The three orders appealed from should be affirmed.

All concur.

Orders affirmed.