WALTER S. HODGDON & others *vs.* CITY OF HAVERHILL & others.

Essex.   November 7, 1906. — January 2, 1907.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Commonwealth.   Constitutional Law.   Armory.   Militia.   Tax.*

The Commonwealth cannot be impleaded in its own courts except by its consent clearly manifested by an act of the Legislature.

The Commonwealth cannot be made a defendant in a suit in equity under R. L. c. 25, § 100, by ten taxable inhabitants of a city or town, to restrain the alleged unlawful raising or expenditure of money or incurring of obligations.

The Legislature reasonably may treat the construction of armories as necessary for the maintenance of the militia in suitable efficiency, and accordingly they may order that public money raised by taxation shall be applied for this purpose.

The provisions relating to armories embodied in St. 1905, c. 465, §§ 110–123, and as now in force contained in St. 1906, c. 504, § 9, providing in substance that, if the city council of any city shall vote to have an armory constructed therein and shall designate the amount of the loan necessary therefor, the armory commissioners of the Commonwealth shall acquire a suitable lot of land in that city

and erect thereon an armory at the expense of the Commonwealth, that to meet such expense the Commonwealth shall issue its bonds as described in the statute, and that the amount required each year to pay the interest on such bonds and to establish a sinking fund for their final retirement shall be assessed by the Commonwealth upon the city until the debt has been extinguished, are constitutional.

BILL IN EQUITY, filed in the Supreme Judicial Court on January 3, 1906, under R. L. c. 25, § 100, by ten taxable inhabitants of the city of Haverhill, against " the city of Haverhill, represented by Roswell L. Wood as mayor, and its boards of common council and aldermen by non-registered vote, and Arthur T. Jacobs as treasurer, the Commonwealth of Massachusetts, represented by Joseph N. Peterson, Josiah Prickett and George Howland Cox as armory commissioners, and Arthur B. Chapin as treasurer and receiver general, and John M. Roche armory contractor," praying that the statutes relating to the construction of armories shall be declared unconstitutional, that the defendants representing the Commonwealth be required to reimburse the city of Haverhill for all money expended on account of a State armory constructed in that city, for which the city council designated the sum of $40,000 as the amount necessary for acquiring the land and erecting the building, for which amount the Commonwealth issued bonds under the statutes alleged to be unconstitutional, and that the defendants representing the city of Haverhill be required to convey the title of the armory land to the Commonwealth.

The case was heard by *Braley*, J., who made a decree that the bill be dismissed.   The plaintiff Hodgdon appealed.

*W. S. Hodgdon, pro se.*

*G. M. G. Nichols*, for the city of Haverhill, relied on the brief for the Commonwealth.

*D. Malone*, Attorney General, *& F. T. Field*, Assistant Attorney General, for the Commonwealth, submitted a brief.

SHELDON, J.   This cause was heard before a single justice of this court upon the bill, the answer of the city of Haverhill, and a motion to dismiss by the Commonwealth, and comes before us upon the plaintiff's appeal from a decree dismissing the bill.

It is plain that the bill cannot be maintained against the Commonwealth.   No statutory permission for such a procedure has been brought to our attention, nor are we aware of any legis-

lation authorizing it. In the absence of such legislation the Commonwealth cannot be impleaded in its own courts. *Nash* v. *Commonwealth,* 174 Mass. 335, 338, and cases there cited. As against the Commonwealth the bill rightly was dismissed.

As to the other defendants, although the petition is inartificially drawn and the prayers for relief are inappropriate, it may perhaps be treated as brought against the defendants other than the Commonwealth under R. L. c. 25, § 100, and as raising the question of the constitutionality of the statutes relating to the construction of armories. The statutes which were in force at the times of the passage by the city council of the order in question and of the issuing of bonds in consequence thereof by the treasurer and receiver general of the Commonwealth, are R. L. c. 16, §§ 106–112, and St. 1904, c. 371. These statutes, together with St. 1905, c. 391, were afterwards embodied in St. 1905, c. 465, §§ 111–115, and as now in force are contained in St. 1906, c. 504, § 9. In substance it was provided in these statutes that if the city council of any city shall vote to have an armory constructed therein and shall designate the amount of the loan necessary therefor, the armory commissioners of the Commonwealth shall thereupon acquire a suitable lot of land in that city and erect thereon an armory at the expense of the Commonwealth, the means to be obtained by an issue of bonds of the Commonwealth, and that the amount required each year to pay the interest upon such bonds and to establish a sinking fund for their final payment shall be paid by the city to the Commonwealth. The title to such land was to vest absolutely in the city; and an annual rent for the armory was to be paid by the Commonwealth to the city until the extinguishment of the debt created for its erection.

There is of course no contention that money can be raised by taxation for any other than a public purpose. *Opinion of the Justices,* 186 Mass. 603, and cases there cited. But it is equally undoubted that the maintenance of the militia is a public purpose for which taxation lawfully may be imposed. This is specified in art. 1, § 8 of the Constitution of the United States as one of the purposes for which the national Congress is given power to raise money. Our own Constitution expressly provides that the taxes, duties and excises which the General Court is

authorized to impose and levy are to be disposed of "for the public service, in the necessary defence and support of the government of the said Commonwealth, and the protection and preservation of the subjects thereof." Const. Mass. c. 1, § 1, art. 4. Further recognition of the militia as a means of public defence and provision for its control and organization are to be found in c. 2, § 1, arts. 7 and 10 of the Constitution and in arts. 4 and 5 of the Amendments thereto. And the Legislature may reasonably treat the construction of armories as necessary for the maintenance of the militia in suitable efficiency, and accordingly it may order public money raised by taxation to be applied for this purpose. This necessarily follows from the reasoning of the court in *Lowell* v. *Oliver*, 8 Allen, 247.

It is suggested however that these statutes ought to be adjudged unconstitutional because the maintenance of the militia and the construction of armories as incidental thereto are strictly for the defence and protection of the entire Commonwealth and not in any sense for the special or peculiar benefit of the city in which any special armory may happen to be situated. It is argued that the taxation to be imposed to meet the interest and finally the principal of the bonds here in question, being levied on the city of Haverhill only, cannot be said, in the language of the Constitution, c. 1, § 1, art. 4, to be "taxes, upon all the inhabitants of, and persons resident, and estates lying, within" the Commonwealth. But this contention may be satisfactorily answered.

In the first place it is to be observed that the statute provides that an annual rent is to be paid by the Commonwealth to the city in which the armory is erected, until the extinguishment of the debt created for its erection ; that the armory is to be under the control of the adjutant general under the orders of the commander in chief; that all expenses of the care, furnishing and repairs of the armory are to be paid by the Commonwealth, and that no proceedings are to be had and no expenses for the erection of such an armory shall be incurred except in accordance with the previous vote of the city council. R. L. c. 16, §§ 107–119. St. 1904, c. 371. It is contended that a vote passed by the city council after the enactment of these statutes and in accord-

ance with the terms thereof may well, after the Commonwealth has acted thereon by issuing bonds in conformity with the terms both of the statute and of this vote, and after the making of a contract for the erection of an armory thereon, be regarded as constituting an express assent voluntarily given by the city, for a valuable consideration, to the Commonwealth, of the terms of which neither the city nor any of its inhabitants or taxpayers has the right to complain. *Prince* v. *Crocker*, 166 Mass. 347, 359, 360, and cases there cited. And the consideration, it is contended, differentiates the case at bar from *Stetson* v. *Kempton*, 13 Mass. 272, and the other cases in which that decision has been followed. *Freeland* v. *Hastings*, 10 Allen, 570. *Agawam* v. *Hampden*, 130 Mass. 528. *Lemon* v. *Newton*, 134 Mass. 476. *Flood* v. *Leahy*, 183 Mass. 232.

But without considering this contention, and apart from any question of the effect of the vote of the city council in this case, we are of opinion that the Legislature lawfully may either authorize or require cities or towns to construct armories for militia companies stationed therein. This is within the doctrine laid down in *Prince* v. *Crocker*, 166 Mass. 347 ; and so far as the decision in that case turned upon the fact that the subway there considered was to become the property of the city of Boston, it is equally applicable here, for under the statutes here in question the armory is the property of the city of Haverhill. R. L. c. 16, § 107. And see St. 1905, c. 465, § 112, and § 116 as amended by St. 1906, c. 504, § 9. Roads and bridges, no less than armories, are established for the common good, and for the use and benefit of all the inhabitants of the Commonwealth; but as to them, as was pointed out in *Prince* v. *Crocker*, *ubi supra*, " the doctrine is well established, in this Commonwealth and elsewhere, that the Legislature may prescribe what shall be done, and require cities and towns to bear the expense to such an extent and in such proportions as it may determine." And see the cases cited on p. 359. The reasoning of *Attorney General* v. *Williams*, 174 Mass. 476, 481, is to the same effect. It there was said by the present Chief Justice of this court : " The Legislature may change the political subdivisions of the Commonwealth by creating, changing, or abolishing particular

cities, towns, or counties. It may require any of them to bear such share of the public burdens as it deems just and equitable. This right has been exercised in a great variety of ways. *Kingman, petitioner,* 153 Mass. 566, and cases and statutes there cited. It does not depend upon the clause of the Constitution which authorizes the imposition of taxes, but upon the more general provisions defining the power of the Legislature." Such legislation has been too often sustained by this court to require further citation of cases. The latest case in which its validity was assumed was *County Commissioners of Bristol, petitioners, ante,* 257, decided since this case was argued. It is now beyond a doubt that within reasonable limits the Legislature may apportion burdens like this, in such a manner as in its judgment will best tend to secure fairness and equality. *Lowell* v. *Oliver,* 8 Allen, 247. And, as was pointed out in *Bryant* v. *Palmer,* 152 N. Y. 412, 416, while it is true that the main object of keeping up the militia is to provide for the defence and protection of the whole people, there is yet special advantage to those communities in which organizations of the militia are stationed, and in which armories have been constructed for the accommodation of those organizations; and the Legislature properly may consider this local advantage in apportioning the burden of taxation for this purpose. The same general doctrine is maintained in *Kingman, petitioner,* 153 Mass. 566; *Adams, petitioner,* 165 Mass. 497, 499; *De Las Casas, petitioner,* 178 Mass. 213, 218, and 180 Mass. 471. Nor is it any objection to the validity of this legislation that the money is to be raised in the first instance by an issue of bonds to be made by the Commonwealth, while the city is to be charged with the annual interest upon these bonds and to provide a sinking fund for their final redemption. This is fully within the principle declared in *Kingman, petitioner,* 153 Mass. 566, 573. Whether it was the wisest manner of raising the needed money was wholly for the Legislature to determine.

The decisions in *Hubbard* v. *Fitzsimmons,* 57 Ohio St. 436, and *State* v. *Dickenson,* 44 Fla. 623, under the constitutions of those States come to a different conclusion from that which we have reached. So far as the reasoning of those cases is at variance with our conclusion, we do not think that it should be followed in preference to our own decisions already cited. A

fundamentally different view seems to have been adopted in those States from that which has prevailed here, perhaps because of the difference of their constitutions and statutes from ours. Indeed, in *Hubbard* v. *Fitzsimmons*, at page 448 of the report, it seems to be assumed that in Ohio a court house for the use of the Supreme Court could not be erected at the expense of the county.

We are of opinion that these statutes are constitutional and valid.

Some objections have been taken to the proceedings which have been had in this case. The St. of 1904, c. 371, required simply a vote of the city council of Haverhill; no special manner of taking that vote and no particular majority in either branch of the city council was required. And it ought not to be necessary to say that we cannot consider on this bill any objections to the qualifications of any of the public officers whose acts are here in question, or to their good faith in the performance of their official duties.

The order dismissing the bill must be

*Affirmed.*