DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 16776. *En Banc*. March 3, 1922.]

THE STATE OF WASHINGTON, *on the Relation of Maurice Thompson, as Adjutant General, Respondent,* v. ARTHUR W. BURCH, *as Auditor of the City of Spokane, Appellant.*[1]

STATES (25)—APPROPRIATIONS—"CAPITAL OUTLAYS"—POWERS OF OFFICERS—IMPROVEMENTS TO ARMORY. Under Laws 1921, p 581, § 2, defining capital outlays by the state as those relating to the purchase of property and the making of new improvements, and the general appropriation act (Laws 1921, p. 605), the adjutant general is vested with authority and discretion to make an addition to an armory previously established by legislative enactment.

MUNICIPAL CORPORATIONS (482, 484)—INDEBTEDNESS—POWERS—CORPORATE PURPOSES—CONSTRUCTION OF ARMORY—CONSTITUTIONAL AND STATUTORY PROVISIONS. Rem. Code, § 3831-5, authorizing cities to expend money for payment in whole or in part for an armory site is not violative of Const., art. 1, § 6, prohibiting indebtedness for other than strictly a municipal purpose; since a state armory constitutes a local benefit, under Rem. Code, § 7183, which authorizes the calling out of the National Guard in the event of insurrection, rebellion, invasion, tumult, riot, resistance to law or process or breach of the peace occurring in the vicinity of any station of such organization. [See Rem. Comp. Stat., §§ 3996, 8469.]

SAME (482, 484). Where a city makes an appropriation for an armory building under legislative authority, it is exercising functions conferred by law, and its action is equivalent to the performance of a mandatory duty required by the legislature.

Appeal from a judgment of the superior court for Spokane county, Lindsley, J., entered August 30, 1921,

[1]Reported in 204 Pac. 785.

in favor of the plaintiff, upon overruling a demurrer to the complaint, in an action to compel the issuance of a city warrant. Affirmed.

*J. M. Geraghty* and *Alex M. Winston,* for appellant.
*The Attorney General, C. A. Orndorff,* and *Nat U. Brown,* for respondent.

MAIN, J.—The purpose of this action was to require the auditor of the city of Spokane to issue a warrant drawn upon the treasury of the city for the sum of $7,500. To the complaint the auditor interposed a demurrer, which was overruled. He thereupon elected not to plead further and that he would stand upon his demurrer. A judgment was entered directing that a writ of mandate issue requiring the auditor to issue a warrant as prayed for. From this judgment, the auditor appeals.

The facts as stated in the complaint may be summarized as follows: The Adjutant General of the state of Washington, by virtue of his office, has and exercises control and management of the property of the state devoted to the use of its armed forces, and the armory of the city of Spokane is devoted to such use. By reason of the fact that the public welfare, peace and security demand a larger number of troops in the city of Spokane than has heretofore been necessary, a substantial addition to the armory there located is necessary, and this will require the acquisition of real property adjacent to the present site. The city of Spokane, by ordinance passed by the city council on May 16, 1921, appropriated the sum of $7,500 for the purpose of aiding in the purchase of land necessary to be acquired for making the improvement to the armory, and thereafter the appellant, the city auditor, refused to issue a warrant drawn upon the treasury

for the sum named. It was to compel the issuance of this warrant that the action in mandamus was instituted.

The appellant makes two points: first, that the legislature has not authorized an appropriation for such an armory, and that therefore the city is not authorized to issue the warrant; and second, that even if an appropriation has been made by the legislature, the city council cannot expend the funds of the city, because the legislature has no power to authorize such appropriation for the purpose mentioned. In the general appropriation act, Laws of 1921, p. 605, under the heading for the state military department, appropriations are made, one of which is "Capital Outlays, $151,000." In § 2 of the appropriation act, Laws of 1921, p. 581, Capital Outlays is defined: "The first (outlay) relates to the purchase of property, buildings, land and equipment and the making of new improvements." Under this definition the military authorities of the state are vested with the discretion as to what buildings shall be added to by way of improvement or additional construction. Until the appropriation was authorized, the city would have no power to purchase land for an addition to the armory. The appropriation being made for the military department, the Adjutant General, by virtue of his office, having exercise of the control and the management of the property of the state devoted to the use of its armed forces, was authorized to make the addition to the armory. The question here is not whether the Adjutant General has the right to locate an armory not yet established and expend the funds therefor, but simply whether he is vested with the discretion to make an improvement or addition to an armory previously established by legislative enactment.

The second question is whether the city, even though authorized by the legislature, has power to expend money for armory purposes. Under Rem. Code, § 3831-5 [Rem. Comp. Stat., § 3996] (P. C., § 3765-152), any city or county in the state is authorized and empowered to expend money from its current expense fund in payment, in whole or in part, for an armory site, whenever the legislature of the state shall appropriate money for, or authorize the construction of, such armory within such city or county for use of the National Guard which may be stationed within such city or county. The constitution of the state provides that the municipal authorities are vested only with authority to assess and collect taxes for corporate purposes. The appellant argues that the construction of an armory is not a corporate purpose and that, therefore, under the constitution, the proposed expenditure is unlawful. In *Lancey v. King County,* 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817, an action was brought to restrain the county officers from proceeding under an act by the legislature to condemn land for a right of way for a ship canal to connect Lakes Union and Washington, in King county, with the waters of Puget Sound, which undertaking was projected by the Federal government. It was contended in that case that the act was obnoxious to the provisions of § 6, of art. 1, of the constitution, which prohibits a county from incurring a debt for any other than a strictly county purpose. It was held that, since the benefits resulting from the improvement would be largely local, notwithstanding the fact that the improvement was projected by the Federal government and would be of great general benefit, the local benefit would sustain the right of the county to levy a tax to pay for the improvement. It was there said:

"It is next insisted that the act is obnoxious to the provisions of section 6, article 8, of the constitution, which prohibits a county from incurring debt for any other than strictly county purposes, it being contended that the tax to be levied in the prosecution of said undertaking is not for a county purpose, but that it is for a state or federal purpose. But it is beyond question that the proposed undertaking is a public improvement. It is entirely within the limits of King county, and is for the purpose of connecting two large public waterways with the Pacific ocean, and it seems to us that such a canal can more properly be considered a public improvement than a railway for the construction of which it is well settled that aid may be granted by a municipality when authorized to do so by the legislature, there being no constitutional prohibition. The word 'strictly' lends little or no additional meaning to the provision. It could not have been intended thereby to limit counties to ordinary running expenses, and a canal may be as strictly a county purpose as a highway or a bridge, etc. It is apparent that the benefits resulting from this particular improvement will be largely local, notwithstanding the fact that it may also be of great general benefit, and it results that the purpose of the tax is local as well as public."

The holding in that case would be sufficient to authorize the city to make the expenditure involved in this case, providing the erection of an armory in a municipality confers local benefit, were it not for the doubt cast upon the decision by some language used in the case of the *State ex rel. Board of Commissioners v. Clausen*, 95 Wash. 214, 163 Pac. 744, where it was said:

"As we now view it, we would not now hold that building an armory was exercising corporate powers for purely county purposes. It seems to us that the building of an armory falls within those higher and sovereign powers which the state exercises for the protection and welfare of all its citizens, and that among the governmental powers exercised by a sovereign

state there are none higher than those which it exercises for the public safety and general welfare of the state.''

Under the doctrine there announced, if the right to expend money for an armory could not be sustained on the ground that there was resultant local benefit, as in the case of the ship canal, *Lancey v. King County, supra,* it nevertheless could be sustained upon the theory that the state in authorizing it exercised its sovereign power. The right of a municipality to levy a tax and expend money for an armory erected within its corporate limits for the use of the National Guard, which is a state organization, has generally been sustained on the theory that there was a resultant local benefit. *Hodgdon v. Haverhill,* 193 Mass. 406, 79 N. E. 830; *Rankin v. Yoran,* 72 Ore. 224, 143 Pac. 894; *Bryant v. Palmer,* 152 N. Y. 412, 46 N. E. 851; *People v. Supervisors, etc.,* 28 Cal. 228.

In *Hubbard v. Fitzsimmons,* 57 Ohio St. 436, 49 N. E. 477 and *State ex rel. Milton v. Dickenson,* 44 Fla. 623, 33 South. 514, 60 L. R. A. 539, the supreme courts, respectively, of Ohio and Florida took the opposite view. In a later case, however, *State ex rel. Clemmer & J. Co. v. Turner,* 93 Ohio St. 379, 113 N. E. 327, the Ohio supreme court sustained the right of the city to expend money for an armory to be located within its corporate limits, on the theory that in that particular case the city of Akron would receive a direct benefit in the use of the building to be erected. The Florida supreme court, in a later case, *Jordan v. Duval County,* 68 Fla. 48, 66 South. 298, sustained the right of a municipality to expend money for an armory, on the theory that the legislature in providing for such armory had determined in the act that its erection would promote a county purpose. In *Terry v. King County,* 43 Wash.

61, 86 Pac. 210, 9 Ann. Cas. 1170, it was held that an act authorizing the counties of King, Pierce and Spokane to create an indebtedness for the purpose of acquiring sites for the construction of state armories was a special act, and for this reason could not be sustained. That case does not hold that the construction of an armory, even though it confers a local benefit, does not satisfy the requirement of the constitution as to the expenditure of money by a municipality for corporate purposes. It can hardly be doubted that in this case the construction of an armory, or an addition thereto, in the city of Spokane confers a local benefit. In addition to the reasons ordinarily given for sustaining such acts on the theory of a resultant local benefit, there is a statute, § 7183 of Remington's 1915 Code, which provides, among other things, that in the event of insurrection, rebellion, invasion, tumult, riot, resistance to law or process or breach of the peace occurring in the vicinity of the station of any organization or organizations of the National Guard of Washington, that such organization may, upon the conditions there specified, be ordered out to suppress such insurrection, riot, resistance to law, and so forth. [Rem. Comp. Stat., § 8469.]

There is some argument to the effect that the authorizing act of the legislature is only permissive and not mandatory, but it does not seem to us that this is a material consideration. The city, in attempting to make the appropriation, is exercising functions conferred upon it by law, and the situation is the same as though it were performing a mandatory duty required by the legislature.

The judgment will be affirmed.

PARKER, C. J., FULLERTON, HOLCOMB, TOLMAN, and HOVEY, JJ., concur.