FILED
COURT OF APPEALS
DIVISION II

2015 APR -7 AM 9: 25

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45749-1-II |
| Respondent, | |
| v. | |
| BRYAN PATRICK BEST, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Bryan Patrick Best appeals his convictions of residential burglary and second degree possession of stolen property, arguing that the evidence of value was insufficient to support his possession of stolen property conviction and that the trial court violated his constitutional right to a public trial by taking peremptory jury challenges at sidebar. We hold that the evidence was sufficient to prove that Best possessed stolen property that exceeded $750 in value and that his right to a public trial was not violated, and we affirm his convictions.

## FACTS

On January 4, 2013, William Dotson returned to his home after work and discovered that his house, barn, and two outbuildings had been burglarized. Property belonging to him and his wife, Amy Sakson, was strewn throughout the house, the other buildings, and the yard. Dotson called 911, and Deputy Sheriff Richard Ramirez responded. The couple gave him a list of missing property.

At about 1:00 a.m. on January 5, Elizabeth Miller was driving home from work when she saw four or five people pushing a truck in front of her property. She called 911, and Deputy

Ramirez responded. Ramirez found Best, Matthew Smith, and Susie Wren standing beside a loaded pick-up truck. When Ramirez looked into the open truck bed, he saw many items that Dotson and Sakson had listed as missing.

Best told Ramirez that he owned the truck and had run out of gas. Best explained that the televisions were from a friend and that the rest of the property in the truck was from his deceased grandfather's storage unit. Best could not provide a specific location or key for the storage unit.

In response to Ramirez's call, Dotson and Sakson arrived and recognized much of what was in the truck as their property. Ramirez then arrested Best, Smith, and Wren and took them to jail. Best asked to speak to Ramirez at the jail. After waiving his *Miranda*[1] rights, Best provided a written statement explaining what had happened.

Best stated that he had been providing transportation to Smith and Wren in exchange for drugs. On the morning of January 4, Smith directed Best to the Dotson home and had him park some distance away. About an hour later, Smith called Best and told him to drive to the house and park behind the barn. Smith had some property stacked up, and Best helped him load it into the truck. Best stated that the property from the Dotson home was in his truck, except for two laptop computers that Smith sold shortly after the burglary.

The State charged Best by amended information with residential burglary and second degree possession of stolen property. Following the jury voir dire, the attorneys approached the bench and exercised their peremptory challenges by alternately striking names from the jury list. The court then announced the jurors selected.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1062, 16 L. Ed. 2d 694 (1966).

At trial, Miller and Deputy Ramirez testified to the facts cited above. Dotson added that when he looked through his house and adjoining property after the burglary, he discovered that the missing items included two sets of golf clubs, a Dyson vacuum cleaner, two television sets, two laptop computers, and some lawn ornaments. The State introduced photographs of the vacuum cleaner, a golf bag and clubs, two television sets, and the lawn ornaments found in the truck. Dotson said that he paid $900 for the 10-year-old set of graphite shaft Cleveland clubs, and $400 and $200-250 for the television sets. The television sets were three or four years old.

Sakson testified that she paid $2,000 for the stolen Dell laptop in 2008 and $1,400 for the stolen Hewlett Packard laptop in 2010. She testified that she used one computer in her bedroom and had another in a back room. She paid $399 for her Dyson vacuum cleaner in 2011 and had been using it for two years. She added that she paid $70-75 for the recovered lawn ornaments.

Best moved to dismiss the possession of stolen property charge at the end of the State's case, arguing that there was insufficient evidence to prove the value of the stolen property. The court denied his motion but ordered additional briefing on the issue of value if the jury returned a guilty verdict. The court instructed the jury as follows on the elements of second degree possession of stolen property:

> (1) That on or about January 4, 2013, the defendant knowingly possessed stolen property;
> (2) That the defendant acted with knowledge that the property had been stolen;
> (3) That the defendant withheld or appropriated the property to the use of someone other than the true owner or person entitled thereto;
> (4) That the stolen property had a value in excess of $750.00; and
> (5) That the above acts occurred in the State of Washington.

Suppl. Clerk's Papers at 18 (Instruction 5).

3

The jury found Best guilty as charged. The trial court then considered the parties' briefing and argument and concluded that the evidence was sufficient to prove the required value. The trial court imposed sentences of 12 months for the burglary and 90 days for the possession conviction. Best appeals both convictions.

## ANALYSIS

A.     SUFFICIENCY OF THE EVIDENCE: POSSESSION OF STOLEN PROPERTY

Best argues that the evidence was insufficient to prove that the stolen property he possessed exceeded $750 in value. Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

To convict Best of possession of stolen property in the second degree, the State had to prove that he possessed stolen property that exceeded $750 in value but did not exceed $5,000 in value. RCW 9A.56.160(1)(a). As the trial court instructed the jury, "Value means the market value of the property at the time and in the approximate area of the act." Clerk's Papers at 19; RCW 9A.56.010(21). Market value is based on an objective standard and is the price that a well-informed buyer would pay to a well-informed seller. *State v. Kleist*, 126 Wn.2d 432, 438, 895 P.2d 398 (1995); *State v. Ehrhardt*, 167 Wn. App. 934, 944, 276 P.3d 332 (2012).

Best argues that the only evidence of the stolen property's value was the price paid for the items. Evidence of price paid is entitled to great weight in determining the value of an item, but that price cannot be too remote in time. *State v. Longshore*, 141 Wn.2d 414, 430, 5 P.3d 1256 (2000); *State v. Melrose*, 2 Wn. App. 824, 831, 470 P.2d 552 (1970). Best contends that the prices paid for the Dotson property were too remote in time to establish market value.

In *Longshore*, evidence of the price paid for clams taken from a private beach the evening before the theft of more clams from the same beach was sufficient to prove the market value of the stolen clams. 141 Wn.2d at 430. In *Melrose*, evidence of the price paid for a camera five years before its theft, combined with consideration of the camera itself, was sufficient to establish market value. 2 Wn. App. at 830-32. The jury could consider the camera and allow for changes in condition that affected its market value. *Id.* at 831. The *Melrose* court reasoned that even if the State had introduced expert testimony about the camera's market value, the jury could have rejected that testimony and determined value from the other evidence by "using the judgment of persons of ordinary experience and knowledge." *Id.* at 832; *see also State v. Hermann*, 138 Wn. App. 596, 602, 158 P.3d 96 (2007) (value need not be proven by direct evidence because jury may draw reasonable inferences from the evidence).

We relied on the trade value of stolen property as well as the jury's judgment in finding sufficient evidence of market value in *State v. McPhee*, 156 Wn. App. 44, 230 P.3d 284, *review denied*, 169 Wn.2d 1028 (2010). In *McPhee*, the owner of stolen binoculars and tusks testified that he traded two salmon charter license permits, each worth $750, for the binoculars, and the court admitted both the binoculars and tusks into evidence. 156 Wn. App. at 65-66. The trade

5

value was essentially the price paid for the binoculars. We cited no testimony about the timing of the trade.

Here, the State introduced evidence of the price that the owners paid for the stolen items, mostly within the past two to five years. The total retail price for these items exceeded $5,000. In addition, the jury saw photographs of the golf clubs, vacuum cleaner, television sets, and lawn ornaments, and it could infer their current value from those photographs. Under *McPhee* and *Melrose*, there was sufficient evidence that the stolen property exceeded $750 in value.

Best maintains, however, that our decision in *Ehrhardt* shows that this evidence of value was insufficient. The victim in *Ehrhardt* testified about the value of two rotary hammers and two nail guns stolen from his garage. 167 Wn. App. at 938. He testified that the hammers belonged to his employer, cost about $450, and were about three years old. *Id.* at 938. He added that the nail guns also belonged to his employer, cost around $230 each, and were about three years old. *Id.* at 938. He identified these items from photographs the State admitted into evidence. *Id.* at 938. We held that testimony from a non-owner about the tools' original cost, and photographs showing them from one angle, was insufficient to establish market value. *Id.* at 947. We reasoned that the jury could not infer from the photographs whether the tools worked or what effect their condition had on their value. *Id.* at 947.

We found the facts in *Ehrhardt* analogous to those in *State v. Morley*, 119 Wn. App. 939, 83 P.3d 1023 (2004). 167 Wn. App. at 945-46. At issue in *Morley* was the market value of a used rental generator that had been purchased for a substantial discount from its $2,000 price. 119 Wn. App. at 944. The generator's retail value was not evidence of fair market value where the generator was obtained at less than retail price and was not offered for sale before its theft. *Morley*, 119 Wn.

App. at 943. In both *Morley* and *Ehrhardt*, the State presented no direct evidence and insufficient circumstantial evidence of the condition or depreciation of the stolen property from which the jury could infer market value. *Ehrhardt*, 167 Wn. App. at 946.

The facts in *Ehrhardt* and *Morley* are distinguishable from those presented here. Dotson and his wife testified about the prices they paid for the stolen property, which together exceeded $5,000. Although the golf clubs were 10 years old, most of the remaining property was 2 to 5 years old. In addition, much of the property came from inside the home and was being used. The jury could infer from the testimony and photographs that the current market value of this property exceeded $750. We find the evidence sufficient to support Best's conviction of second degree possession of stolen property.

## B.     PUBLIC TRIAL VIOLATION

Best also argues that the trial court violated his right to a public trial when it conducted peremptory jury challenges at a sidebar conference. The Sixth Amendment to the United States Constitution and article 1, section 22 of the Washington State Constitution guarantee a defendant the right to a public trial. *State v. Dunn*, 180 Wn. App. 570, 574, 321 P.3d 1283 (2014), *review denied*, 181 Wn.2d 1030 (2015). In addressing an alleged violation of the public trial right, the threshold determination is whether the proceeding at issue implicates that right. *Dunn*, 180 Wn. App. at 574.

The Supreme Court recently held that sidebars do not implicate the public trial right. *State v. Smith*, 181 Wn.2d 508, 511, 334 P.3d 1049 (2014). The decision in *Smith* confirms our holding in *Dunn* that allowing attorneys to exercise peremptory challenges during a sidebar does not violate a defendant's public trial right. 180 Wn. App. at 574. We need not address this issue further.

No. 45749-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Sutton, J.

8