# THE MAYOR AND CITY COUNCIL OF BALTIMORE AND Others *vs.* THE KEELEY INSTITUTE.

*Medical Treatment of Habitual Drunkards at Public Expense.— Constitutional Law.—Power of Legislature over Municipalities.— Title of Statutes.—Mandamus to Compel Payment by a Municipality.*

The Legislature has the power to require municipal corporations to pay for the medical treatment of habitual drunkards residing within the muncipality, who may be committed by the Courts to a medical institution for such treatment, and who are themselves unable to pay for the same.

The Act of 1894, ch. 247, provides that where a petition to a Circuit Court sets forth that a certain person is an habitual drunkard, a resident of the county or city, that neither the petitioner nor such person is able to defray the expense of medical treatment for drunkenness, and where such person agrees in writing to take such treatment, then the Court shall send such habitual drunkard to some institution for the cure of drunkenness, and order that the expense thereof, not exceeding $100, be paid by the county or city where the drunkard resides. Under this Act the Circuit Court of Baltimore City committed a certain person to the Keeley Institute, and ordered that the sum of $100 for the expense of his treatment be paid out of the treasury of the city. The proceedings in the Circuit Court were *ex parte*, without notice to the municipal authorities, and upon their refusal to pay said sum, a petition was filed by said Institute praying for a writ of *mandamus* commanding such payment to be made. Upon appeal from an order directing the *mandamus* to issue as prayed, *Held*,

1st. That the Act in question is valid under the Constitution of Maryland; the expense of the treatment of pauper drunkards being an expenditure for a public purpose, and the Legislature having the power to compel municipal corporations to perform any act within the ordinary functions of municipal government.

2nd. That although no provision is made for notice to the city of the proceeding, or an opportunity afforded to contest the allegations of the petition, yet the Act is not in violation of the Constitution of the United States, as depriving the city of its property without due process of law.

3rd. That the writ of *mandamus* was the appropriate remedy in this case.

The title of the above-mentioned Act was "An Act to provide for the treatment and cure of habitual drunkards." In the body of the Act provision is made for treatment only. *Held*, that the Act is not in violation of Art. 3, sec. 29 of the Constitution, which provides that every law enacted by the General Assembly shall embrace but one subject, and that shall be described in the title.

Appeal from a *pro forma* order of the Superior Court of Baltimore City, directing a writ of *mandamus* to issue commanding the appellants to pay to the appellee the sum of one hundred dollars, which sum a decree of the Circuit Court had directed should be paid for the treatment of an habitual drunkard committed to the custody of the appellee under the Act of 1894, ch. 247. This Act is summarized in the opinion of the Court.

On June 11, 1894, the petition of Mrs. Annie Moylan, a sister of the habitual drunkard, in compliance with the terms of the Act of 1894, chapter 247, was filed in the Circuit Court of Baltimore City, and on same day the Court passed a decree directing that the habitual drunkard be sent to the appellee to be treated for drunkenness, at the expense of the city of Baltimore. The language of the decree providing for the payment of the expense of said treatment is as follows: " That the expense of such treatment (to-wit, the sum of one hundred dollars, in full), be paid out of the treasury of the city of Baltimore, in the same manner that other claims against such city of Baltimore, for the administration of justice, are paid." The decree also recited that the facts necessary to be found, as provided under the terms of the Act in question, had been found by the Court. The Court's language, in the decree, is as follows: "And the Court, being satisfied from examination of said petition and annexed agreement, affidavit and names, and from oral examination, in open Court, under oath, of the said John P. Moran and Annie Moylan, and other examination, that the facts set forth in the said petition are true, and that the said drunkard, John P. Moran, has been

a resident of Baltimore City for six months next preceding the application aforesaid, and that such drunkard, John P. Moran, of his own free will, desires to take such treatment." On June 12, 1894, two persons, described as the local and general managers for Maryland, of the appellee, took a form of an oath of office, in which the office, with which they are to be entrusted, is described as " the office of bailiff for habitual drunkards." On the 27th June, 1894, a "final decree" was passed by same Court, in which many of the statements and recitals of the decree of the 11th June, 1894, are repeated, especially the clause above cited, providing for the payment by the appellant of the one hundred dollars, the language being exactly the same as in the original decree. This *final decree* recites that the treatment has been given and discharges the habitual drunkard from the custody of the appellee. The whole proceedings were *ex-parte*, and the first notice or knowledge the appellants had of any of said proceedings in the Circuit Court was the demand made on James R. Horner, City Comptroller, one of the appellants, for the payment of the one hundred dollars named in decree. The Comptroller declined to pay the amount.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, ROBERTS and BOYD, J. J.

*Thomas G. Hayes, City Counsellor,* for the appellants.

The Act of 1894, ch. 247, is void, because the Legislature has no power to compel the city of Baltimore, without its consent, to tax its citizens for the support of habitual drunkards at inebriate asylums. There are certain public duties which distinctly appertain to municipalities as governmental agencies, over the performance of which the State has direct and complete control entirely independent of the wish or will of the municipality, and over which the State may at any time assume direct control, such as the public highways within the territorial limits of the municipal cor-

poration. This power of the State over highways, within the limits of municipalities, has never been denied or seriously questioned. But the power of the State over municipalities is not absolute or unlimited. There are many things which the State cannot compel a municipal corporation to do without its consent. The test is, does the thing required by the State to be done by the municipal corporation, without its consent, *"fall within the ordinary functions of municipal government?"* If it does not, then, without the consent of the municipality, the State cannot compel it to act, let the mandate of the State be ever so peremptory. *M. & C. C. of Balto.* v. *State*, 15 Md. 469; *Pumphrey's case*, 47 Md. 145; *Talbot Co.* v. *Queen Anne's Co.*, 50 Md. 258; *M. & C. C. of Balto.* v. *Reitz*, 50 Md. 580.

The appellant contends that the Legislature has no more power to compel the city of Baltimore to tax its citizens to pay for the treatment of an habitual drunkard, under the terms of the Act of 1894, than it has to pay for the treatment of pneumonia, typhoid fever or any other of the numerous diseases which the flesh· is heir to. An habitual drunkard *per se* is not a subject of governmental concern, much less of municipal treatment by a municipality, with limited powers defined by statute. It is, therefore, respectfully submitted, that the Act makes a contract for the city of Baltimore, without its consent, in a matter of local concern, and not within the ordinary functions of municipal corporations, and especially not within the scope of the powers or duties as expressed in its charter, and hence exceeds the power of the Legislature, and is void. *People* v. *Detroit*, 28 Mich. 228; *People* v. *Chicago*, 51 Ill. 1; *People* v. *Batchelor*, 53 N. Y. 128; *Atkins* v. *Randolph*, 31 Vt. 226; *Cooley on Taxation*, 693, 701; *Cooley on Const. Lim.*, 284; *Lowell* v. *Boston*, 111 Mass. 473; *Hasbronck* v. *Milwaukee*, 13 Wis. 37; *Hampshire* v. *Franklin*, 16 Mass. 84; *State* v. *Tappan*, 29 Wis. 680. "A city is made up of individuals owning the property within its limits, the lots and blocks which compose it and the structures which

adorn them.   What would be the universal judgment should the Legislature, *sua sponte*, project magnificent and costly structures within one of our cities—triumphal arches, splendid columns and perpetual fountains, and require, in the Act creating them, that every owner of property within the city limits should give his individual obligation for his proportion of the cost and impose such costs as a lien upon his property forever ?   What would be the public judgment of such an Act, and where would it differ from the Act under consideration ?"   *People* v. *Chicago*, 51 Ill. 31.

There is a marked distinction between the governmental functions of a municipality and its acts and liabilities as a private corporation.   When it acts within the domain of a private corporation the same rules of law as to the power of the Legislature over it applies as to private individuals, whether natural or artificial.   This distinction is recognized in a number of cases.   *Mayor and C. C. Balto.* v. *Marriott*, 9 Md. 160 ; *Mayor and C. C. Balto.* v. *Brannan*, 14 Md. 227 ; *Moodday* v. *The East Ind. Co.*, 1 Br. Ch. R. 469 ; *Bailey* v. *N. Y.*, 3 Hill, 536 ; *Masterlin* v. *Brooklyn*, 7 Hill, 61 ; *West. Society* v. *Philadelphia*, 31 Pa. 175.

Under Constitution, Art. 15, sec. 6, the city had the right to have a jury pass upon the facts necessary under the Act to be averred and proven before it could be held liable for one hundred dollars, and as the Act deprived it of this constitutional right, it is in violation of the State Constitution and void.   Could the Legislature deprive a citizen of his jury trial and give equity jurisdiction in *assumpsit, debt, ejectment or trespass?*    The appellant contends it could not, because it would violate a fundamental maxim of the State and Federal organic law, to-wit, the decision of all issues of fact in common law actions shall be by a jury and not by a judge.   *Bardwell* v. *Anderson*, 44 Minn. 97.

The Act in question has for its title, "An Act to provide for the treatment and *cure* of habitual drunkards."   The title is deceptive and misleading.   " Treatment and cure," in the title, is proclaimed as the object of the law.   The body

of the law provides solely for treatment, with no word in the body of the statute making a cure a part of the obligation undertaken by the asylum. Bills before the General Assembly are often only read by title. One hearing the title of this bill read had the right to infer that it proposed to provide for the *"cure,"* as well as *"treatment,"* of habitual drunkards. Approval and support of members of the General Assembly, as well as the public, might be had for a bill which provided a *"cure"* of this terrible appetite; while lacking faith in any of the many proposed *"treatments,"* they might disapprove and oppose a law proposing only treatment.

The Act of 1894, chapter 247, is unconstitutional and void, being in conflict with the provisions of the Constitution of the United States. If the duty imposed on the city of Baltimore, without its consent, by the Act of 1894, chapter 247, is a lawful exercise of the power of the Legislature; yet, as the Act in question makes a judicial procedure necessary, in which facts were to be ascertained by evidence given in Court, before the liability of the city attached, and it was required to tax its citizens to pay for the treatment of habitual drunkards; then, inasmuch as the Act in question provided only for an *ex parte* judicial procedure, without any notice to the city or opportunity on the part of the city to be heard before the final judgment, decree or order, the Act is void, being in violation of Article 14, section 1 of the Constitution of the United States, which declares, " nor shall any State deprive any person of life, liberty or property without due process of law."

One of the leading tests, as to whether an inquiry or proceeding is judicial in its character, is whether the decision of the issue presented is to be decided by the Court upon *evidence*. The Supreme Court of Indiana, in drawing the distinction between judicial proceeding and administrative, ministerial or discretionary proceeding, said: " The power to hear and determine, when there is a question admitting of controversy, and the entire matter is not one of *absolute*

and *arbitrary discretion*, implies that in reason and justice the law should, by making provision for notice, give the parties an opportunity to be heard, for otherwise, it cannot justly be said that there is due process of law.  *  *  * Where the matter to be decided is one of pure discretion, and the tribunal decides upon its own judgment, *unaided by evidence*, then notice is not essential." *Kuntz* v. *Sumpton*, 117 Ind. 1, 2 L. R. A. 655 ; see also *Wiener* v. *Bunbury*, 30 Mich. 215*a*.

Every requirement, except one, of a valid judicial proceeding, is provided for in the Act of 1894, chapter 247, Judge or Court, regular allegation by petition, trial by the Court and a provision for judgment or decree.  The one essential element, which is wanting, is proper parties. *Muny* v. *Hoboken*, 18 How. 272 ; *Huber* v. *Riley*, 53 Pa. 112 ; *Rees* v. *Watertown*, 19 Wall. 122 ; *Westerveit* v. *Gregg*, 12 N. Y. 202.  It is confidently claimed by the appellants that the Legislature has attempted by the Act in question to provide a judicial proceeding before the liability of the city attached.

The omission from the Act of 1894, chapter 247, of notice to the city and an opportunity to be heard before final judgment, deprived the city of its property without due process of law.  *Pennoyer* v. *Neff*, 95 U. S. 714 ; *Shore* v. *Manitowoc*, 57 Wis. 5 ; *Philadelphia* v. *Miller*, 49 Pa. 448 ; *Harwood* v. *North Brookfield*, 130 Mass. 561 ; *Lehman* v. *Robinson*, 59 Ala. 244 ; *State* v. *Lindell Hotel*, 9 Mo. App. 455 ; *Garvin* v. *Daussman*, 114 Ind. 429.

*Frederick W. Story* and *P. F. Pampel*, for the appellee.

ROBERTS, J., delivered the opinion of the Court.

The appeal in this case is taken from a *pro forma* order of the Superior Court of Baltimore City, on a case stated for the opinion and order of that Court, in a proceeding instituted by the appellee to obtain the writ of *mandamus* to compel the appellant to pay to the appellee, under a

decree of the Circuit Court of Baltimore City, the sum of one hundred dollars for the treatment of John P. Moran, an habitual drunkard, residing in said city. The sole object of this appeal being to obtain from this Court a determination of the validity *vel non* of the Act of the General Assembly of Maryland, chapter 247, passed January session 1894, entitled "An Act to provide for the treatment and cure of habitual drunkards." The Act by its first section provides that any inhabitant of this State, who is of kin to or a friend of an habitual drunkard, as defined in the fifth section of the Act, may apply by petition to the Circuit Court of the County, or the Circuit Court of Baltimore City, where such drunkard resides, for leave to send such drunkard, at the expense of the county or city, as the case may be, to an institution located in Maryland for the medical treatment of drunkenness, as said Court may designate. The first section further provides, that the petition shall be verified by the applicant and contain the name, age and condition of the habitual drunkard, and show that neither he nor his petitioning kin is financially able to incur the expense of his cure; and further, that said petition shall contain the written agreement of said drunkard to take such treatment and obey the rules of the institution to which he may be sent. The second section provides that the Court shall be satisfied of the truth of the facts stated in the petition before sending the drunkard to an institution, and that the charge for the treatment shall in no case exceed the sum of one hundred dollars; and it then further provides, that the Court shall thereupon order the expense of such treatment be paid out of the treasury of the county or the city of Baltimore, as the case may be, in the same manner as other claims for the administration of justice are paid. The third section has no direct bearing on this subject in controversy here. The fourth section provides that the officers of the institution to which a drunkard is sent shall become sworn officers, without compensation, of the Court sending the drunkard for treatment. The fifth section defines

a drunkard to be "any person who has acquired the habit of using spirituous, malt or fermented liquors, cocaine, or other narcotics to such a degree as to deprive him or her of reasonable self-control." This statement gives substantially all the material facts necessary for the purposes of this controversy.

It is contended that the Act is in conflict with the Constitution of this State, for that the Legislature has no power to compel the city of Baltimore, without its consent, to tax its citizens for the treatment of habitual drunkards at an inebriate asylum.

By the provisions of Art. 16, sec. 47 of Code, whenever by petition under oath any person shall be alleged to be a drunkard, incapable of taking care of himself or herself, or his or her property, any Circuit Court of this State, and also the Circuit Court of Baltimore City, shall have the power, in its discretion, on such preliminary examination or inquiry as it may think proper to make *ex parte,* to issue a warrant to the sheriff of the county or city to arrest and bring the person so charged before such Court. Then follows the summons of a jury in a like manner with the established practice in cases of lunatic paupers, under Art. 59 of Code. Under either Article of the Code the proceeding is *ex parte* and the questions to be passed upon are submitted to the finding of a jury instead of the Court. These two provisions of the Code have been in force in this State for many years, and have been, especially with respect to lunatic paupers, of well-recognized service.

The law now under consideration, in so far as it relates to the *liberty* of the drunkard, does not require the intervention of a jury, for the reason that he voluntarily, and in advance, agrees in writing that the Court may send him to any institution in the State for the medical treatment of drunkenness. We are very clear that the law does not in the remotest possible sense curtail any right of the drunkard. Do the provisions of the law requiring the city to pay for the medical treatment of the drunkard improperly or injuriously

affect any right of the city of Baltimore any more than the tax which is imposed for the maintenance of Courts, civil and criminal, is found to be, as all other taxes are, an exaction for the benefit of the public good.   We fail to recognize the force of this objection, especially in its application to the lunatic paupers of the State.   The principle invoked has just the same force in its application to the condition of an habitual drunkard as to a lunatic pauper.   The law is general in its application and is intended alike for city and county.

The ninth section of Article eleven of the Constitution declares that it " shall not be so construed or taken as to make the political corporation of Baltimore independent of or free from the control which the General Assembly of Maryland has over all such corporations in the State."   This Court, in the *Regent's case*, 9 G. & J., 397, says: " A public corporation is one that is created for political purposes, with political powers, to be exercised for purposes connected with the public good in the administration of civil government; an instrument of the government subject to the control of the Legislature and its members, officers of the government for the administration or discharge of public duties, as in cases of cities, towns, &c.;" And again in the same case, p. 401, it says: " Public corporations are to be governed according to the laws of the land, and the government has the sole right, as trustee of the public interest, to inspect, regulate, control and direct the corporation, its funds and franchises."   Whilst it is not claimed that the Legislature has absolute and unlimited control over the appellant, there can be no doubt as to the power of the Legislature to require the payment by the city of a sum requisite to defray the expense of maintenance and medical treatment of habitual drunkards residing within the corporate limits and committed under the provisions of the law now under consideration.   If the Legislature has authority, which we do not question, to treat habitual drunkards as a class of citizens who are entitled to be restrained or medically cared for by placing them in institutions for treatment, it

would naturally follow that, in so far as the law applies to the citizens of Baltimore, the expense of the treatment of its habitual drunkards ought reasonably be borne by it. It was held, as already stated, in the *Regent's case, supra,* that the government "has the sole right, as trustee of the public interest, to inspect, regulate, control and direct the corporation, its funds and franchises." It is one of the gravest conditions of the century in which we live, and of which legislators have been compelled to make observation, that the victims of the excessive use of alcoholic stimulants, narcotics, &c., have grown to be legion, not of healthy, robust manhood, but of broken, debauched and decrepit men, against whom and for whom, as a class, public sentiment has a right to appeal to the Legislature for protection. LORD BACON has said, "That all the crimes on earth do not destroy so many of the human race, nor alienate so much property as drunkenness." MR. JUSTICE HARLAN, delivering the opinion of Court in *Mugler* v. *Kansas,* 123 U. S. 623, says: "There is no justification for holding that the State, under the guise merely of police regulations, is here aiming to deprive the citizen, of his constitutional rights; for we cannot shut out of view the fact, within the knowledge of all, that the public health, the public morals and the public safety may be endangered by the use of intoxicating drinks, nor the fact, established by statistics accessible to every one, that the idleness, disorder, pauperism and crime existing in the country are in some degree, at least, traceable to this evil."

Mr. Tiedeman, in his work on the *Limitations of Police Power,* sec. 46, says: "It is the policy of some States, notably New York, to establish asylums for the inebriates, where habitual drunkards are received and subjected to a course of medical treatment, which is calculated to effect a cure of the disease of drinking, as it is claimed to be. A large part of human suffering is the almost direct result of drunkenness, and it is certainly to the interest of society to reduce this evil as much as possible. The establishment

and maintenance of inebriate asylums can therefore be lawfully undertaken by the State."

We think the Legislature was possessed of ample power to deal with the subject-matter of the law, and that in what they did they in no respect violated any provision of the Constitution of the State or of the United States.

There is nothing in the contention that the title to the Act violates Art. 3, sec. 29 of the Constitution, which provides that every law enacted by the General Assembly shall embrace but one subject, which shall be described in its title.   The title provides for the *"treatment"* and cure of habitual drunkards, and it is claimed that this contains more than one subject, and that in the provisions of the Act nothing is said about " cure," but reference alone is made to the *"treatment"* of habitual drunkards.   But we think the Legislature must have been influenced by the conviction that the *cure* would in some instances, at least, follow the *"treatment,"* and that cure and treatment constitute but one subject.   We entertain the same view.

In respect to the writ of *mandamus*, we think it properly issued as the remedy appropriate under the circumstances. It follows that the order must be affirmed.

*Order affirmed with costs.*

(Decided March 27th, 1895.)