STATE, Plaintiff, v. BOARD OF COMMISSIONERS OF EDMUNDS COUNTY, Defendant.

## (156 N. W. 96.)

(File No. 3876. Opinion filed February 1, 1916.)

1. **Mandamus—Affidavit for Writ—Payment From County General Fund—Whether Constitutional Debt Limit Exceeded, Immateriality.**

    An affidavit for mandamus to compel a county to issue a warrant, or if without funds, to cause levy therefor to be made, in payment of a claim payable out of its general fund, to reimburse the state for per diem and expenses of an assistant accountant, and which affidavit showed that the county board is without money with which to pay the claim and has made no levy therefor, need not aver that the levy to be made would not be in excess of the constitutional debt limit of the county; that being matter of defense; and such claim is not a special indebtedness payable out of a special fund for which a special levy must be made, but, under Laws 1913, Ch. 206, Sec. 13, is a current expense not requiring a specific levy precedent to payment.

2. **Counties—Expenditures Within Constitutional Debt Limit— When Current Levy Must be Kept Within—Statute.**

    As regards counties, it is only after the constitutional debt limit referred to in Const., Art. 13, Sec. 4, prohibiting the debt of a county or other subdivision from exceeding 5% of assessed value of taxable property therein, has been reached, that current expenses must be kept within the current tax levy or revenues of the year.

3. **Mandamus—Parties—Necessary Parties Plaintiff—Recovery From County by State—Executive Accountant, State Treasurer, as Parties—Statute.**

    Under Code Civ. Proc., Sec. 765, providing that the writ of mandamus shall issue "upon application of the party beneficially interested," neither the state treasurer nor the assistant executive accountant is a necessary party plaintiff in mandamus to compel a party to repay to the state a sum of money paid by the state to the executive accountant for examining accounts of county officers; since, when the state has paid the claim of such accountant, that officer has no further interest

in it; while the state treasurer is merely the custodian of state funds; the state itself being beneficially interested in recovering from the county.

4.  Mandamus—Parties — Necessary Parties Defendant — Recovery From County by State for Executive Accountant's Salary— Members of County Board as Defendants—Statute.

Under Pol. Code, Sec. 809, designating county commissioners as the "Board of County Commissioners," and Civ. Code, Sec. 764, authorizing the writ of mandamus to issue to a "board," held, that a writ of mandamus is not demurrable for non-joinder of members of the board of county commissioners as defendants, where the board itself is made defendant; it being unimportant whether such members are brought into court merely as the "board of county commissioners," or by designating their names as such board.

5.  Mandamus—Parties Defendant—Issue of County General Fund Warrant to State—State Board of Equalization as Defendant.

The state board of equalization (now state tax commission) is not a necessary party defendant in mandamus to compel board of county commissioners to issue a general fund warrant to the state in repayment of salary and expenses of assistant executive accountant.

6.  Counties—Liability to Pay Executive Accountant—Interest of State, of County.

In mandamus to compel county board to issue warrant in repayment of assistant executive accountant for examining accounts of county officers, held, that the defense that the tax levy sought to be compelled is for the purpose of general state interest and benefit, and can only be levied upon all property in the state by uniform taxation, and not upon property in said county alone, is not tenable; that, while in a sense such examination and incidental expenses are of state interest, they are more particularly of county interest, and the particular county should ultimately bear the expense, although, as between the state and the officer, it is paid for out of the state appropriation.

7.  States—Funds, Loan of to County—Executive Accountant Law— Constitution.

Although, under Laws 1913, Ch. 206, Sec. 13, counties are required to reimburse the state for expenses and per diem of assistant executive accountants for examining books of county officers, yet, the state, by making payment of the claims in the first instance, thereby in effect securing prompt payment to its officers, did not make loans to counties in violation of Const., Art. 13, Sec. 1, prohibiting the state from, among other things, loaning its credit to "corporations;" this Court not conceding, however, that that word in the Constitution refers to a public or quasi public corporation.

8. **Taxation—Double Taxation—County Payment of Executive Accountant—Statute.**

The operation of Laws 1913, Ch. 206, Sec. 13, requiring counties to reimburse the state for payments made to assistant executive accountants for examination of county books, which payments to the state are made from funds raised by taxation upon the property of all counties, does not amount to double taxation; since the portion of the state fund so used is in theory thus restored to the state for general state purposes; and the amount that would otherwise be required for general state purposes is lessened by that amount.

9. **Counties—Mandamus Enforcing Claims Against—Verification of Claim—Necessity of Returning Rejected Claim for Verification—Statute.**

The fact that the verification of the state's claims against a county did not comply with Pol. Code, Sec. 861, as amended by Laws 1913, Ch. 151, requiring the verification to show that the money charged therein was actually paid for the purpose therein stated, and that the fees therein charged are such as the law allows, is no ground for refusing a writ of mandamus to compel issuance of county warrants to reimburse the state for moneys paid to assistant executive accountant for examining county books; it appearing on their face that they were claims due the state and that they directed payment to the state treasurer; especially in view of the fact that defendant board had no discretion as to the allowance of the claims after they had been paid by the state. **Held,** further, that if the claims were rejected for improper verification, they should have been returned with notice that they were rejected for that reason.

10. **Constitutional Law — Statutes — Title — Executive Accountant Law.**

The title to Laws 1913, Ch. 206, being "an Act to revise [An Act] relating to the office of executive accountant, conferring on him and his assistants additional powers and duties in formulating a uniform system of public accounting," indicates with sufficient clearness that the act is one contemplating a uniform system of public accounting and auditing throughout the state, and is not invalid under Const. Art. 3, Sec. 21, requiring that a law shall be expressed in its title.

11. **Counties—Claims Against—Executive Accountant Law—Statutes—State Auditor, Duties—Allowance of Claim—Discretion of County Board—Accountant's Interest in Claim.**

Laws 1913, Ch. 206, Sec. 7, requires the executive accountant or his assistant to examine and audit, at irregular periods at least once in two years, the books and accounts of each officer, and upon request of county commissioners for an examination

other than that provided for, or whenever the Governor deems an examination necessary, such accountant or assistant shall make same. Sec. 13 provides for the accountant's salary, and that his assistant shall receive such sum for making county examinations as the Governor may determine, not exceeding $6 per day, that payment shall be made at the next legal or special meeting of county board after the examination is completed, and that the expenses thus incurred shall be paid to state, treasurer, and converted into the general fund; and Sec. 14 requires that all moneys so paid for examinations shall be deposited with state treasurer to the credit of the general fund, and that all salaries, per diem and expenses shall be paid in warrants on said fund. Laws 1913, Ch. 23 (General Appropriation Bill), Sec. 43, requires that all appropriations under said law shall be used only for the specific purposes therein mentioned, and that the state auditor shall issue warrants on certified items and approved vouchers. Pol. Code, Sec. 71, requires that claims payable out of the state treasury shall be examined and adjusted by state auditor, who shall issue warrants payable to state treasury, and Sec. 76, as amended by Laws 1909, Ch. 189, requires, as basis of issuance of a warrant by state auditor in payment of expenses of any state officer or employee, that they shall present to him an itemized verified statement thereof that they have been actually paid out and expended by him. **Held,** that under said laws it is the province of state auditor to examine, investigate, and audit claims of assistant executive accountant, and that, when audited and allowed by him and paid by warrant on state treasurer, the board of county commissioners has no discretion as to whether it will or not pay the same, but it is the duty of the board when properly notified that such claim has been allowed and paid by the state, to cause its warrant to issue in favor of the state for the amount so allowed. **Held,** further, that after such claim has been so audited, allowed, and paid, neither the assistant accountant nor the state accountant has anything to do with the claim against the state, but the sole interest therein against the county for reimbursement is in the state.

**12.    Constitutional Law—Due Process of Law—Counties—Claims of State Against, for Executive Accountant's Expenses—County's Power to Audit Claim.**

Under Const.; Art. 9, Sec. 6, authorizing the Legislature to provide for such county officers as it may deem necessary, and to prescribe their duties, and Sec. 7, requiring county officers to be electors of the county, **held,** that the Legislature may, if it choose, lay upon state officers duties that might have been laid upon county officers, this being solely a matter of

legislative. policy; and the county, being merely a governmental subdivision of the state, is not deprived of any constitutional rights by statutes making state auditor the auditing officer of claims in favor of the state against the counties for reimbursement' of moneys paid for examinations of county books by executive accountants; nor is the county deprived of its property without due process of law, under Const., Art. 6, Sec. 2, when required by the state, under Laws 1913, Ch. 206, and other laws, to repay to it the amount of such claims for county examinations, without such claims being audited by the county board.

Original proceeding by the State of South Dakota, for a writ of mandamus, against the board of county commissioners of Edmunds County. Writ issued.

*C. C. Caldwell,* Attorney General, and *Byron S. Payne,* Assistant Attorney General, for the State.

*Edward D. Barron,* State's Attorney, and *Howard G. Fuller,* for Defendant.

(2) To point two of the opinion, Defendant cited: Const., Art. 13, Sec. 4; 26 Cyc. 435 (B.) ; Peck v. Los Angeles Co., 90 Cal. 384; Schwartz v. Wilson, 75 Cal. 502; Hoxie v. Somerset Co., 25 Me. 333; State v. Lewis, 74 Pac. 498 (Mon.) State v. Beckman, 4 Ohio Cr. Ct. 246.

(3) To point three of the opinion, Plaintiff cited: Code Civ. Proc., Sec. 765; Laws 1913, Ch. 206, Sec. 13.

Defendant cited: Sec. 96, Art. 6, Ch. 3, Pol. Code; 26 Cyc. 398, and foot note 33; Heintz v. Moulton, 7 S. D. 272; Laws 1913, Ch. 206, Sec. 14.

(4) To point four of the opinion, Plaintiff cited: Code Civ. Proc., Secs. 764, 775.

Defendant cited: 26 Cyc. 414 (II.) note 77; People v. Civil Service, Abb. N. Cas. (N. Y.) 64

(5) To point five of the opinion, Defendant cited. Const., Art. 11, Sec. 2; Art. 6, Sec. 17, Art. 10, Sec. 2; Pol. Code, Secs. 2129, 2132; Laws 1907, Ch. 64, Secs. 11, 14.

(6) To point six of the opinion Plaintiff cited: State v. Shumate, 27 Ohio State, 487.

Defendant cited: Const., Art. 10, Sec. 7; Art. 11, Sec. 2; Pol. Code, Sec: 115; Laws 1913, Ch. 206, Secs. 3, 4, 10, 12, 13; Laws 1913 pp. 20, 28.

(7) To point seven of the opinion, Defendant cited: Const., Art. 13, Sec. 1.

(8) To point eight of the opinion, Plaintiff cited: State v. Shumate, 27 Ohio St., 487.

(9) To point nine of the opinion, Plaintiff cited: Laws 1913, Ch. 206, Sec. 13; and submitted that: It became the duty of the county, as soon as this expense was incurred and paid by the state, to repay such sums into the state treasurey.

Defendant cited: Pol. Code, Sec. 861; State ex rel. Wood-ruff-Dunlap v. Bartley et al., 70 N. W. 367; State ex rel. Niles v. Weston, 93 N. W. 182.

(10) To point ten of the opinion, Defendant cited: Const., Art. 3, Sec. 21; State v. Morgan, 2 S. D. 32.

(11) To point eleven of the opinion, Plaintiff cited: Hoyt v. Hughes County, 32 S. D. 117.

Defendant cited: Sawyer v. Mayhew, (S. D.) 71 N. W. 141.

(12) To point twelve of the opinion, Plaintiff cited: 11 Cyc. 341A; Laramie County v. Albany County, 92 U. S. 307; Rans-bottom, Auditor, et al. v. State, ex rel. Robbins, 178 Ind. 80; State v. Shumate, 72 Ohio St. 487; 11 Cyc. 365, 3; Matter of Bryant, 152 N. Y. 412; Baltimore v. Keeley Institute, 81 Md. 106; Gilmore, Treasurer, v. Penobscot County, 107 Me. 345; Mc-Coy v. Handlin, (S. D.) 153 N. W. 361.

Defendant cited: Const., Art. 3, Sec. 23, Subd. 4.

GATES, J. This is an original proceeding in mandamus to compel the defendant board to repay to the state the sum of $891.23 paid by the state for the per diem and expenses of an assistant executive accountant of this state in making an examination and audit of the books and accounts of certain officers of Edmunds county. The essential facts as they appear from the application for the alternative writ, the return thereto, and admissions of counsel are here summarized. On or about July 1, 1913, pursuant to written requests from taxpayers and officials of said county, the Governor of this state, deeming an examination and audit of the books and accounts of said county necessary, directed the executive accountant or one of his assistants to make such examination. On July 10, 1913, defendant board resolved that such examination cover the period from January 1, 1911, to that date. During the months from July to November, 1913, inclusive, an

assistant executive accountant examined and audited the books and accounts of the various officers of said county. In October, 1913, the Governor, deeming it necessary, required an additional examination and audit to be made for the year 1910 covering the office of the clerk of courts of said county, which was done. Prior to beginning such examinations the Governor fixed the per diem of assistant executive accountants at $6. For such examination the assistant executive accountant was paid at divers times out of the general fund of the state of South Dakota, pursuant to vouchers presented to and audited by the state auditor, sums aggregating $678 for per diem and $213.23 for expenses, making in the aggregate $891.23. Claims for said amount on behalf of the state, verified by the executive accountant, were presented to defendant board in the months of October and December, 1913, and the same were rejected by the board on January 9, 1914. The defendant board has made no levy out of which to pay said claims, and has no money in its hands from which the same can be paid. The alternative writ commanded the defendant board to pay said claim to the state treasurer, or, if without funds, to cause a levy therefor to be made, or to show cause, etc. The defendant board demurred to the affidavit upon the fourth and sixth grounds of section 121, C. C. P., and by its further showing raises certain other legal questions.

[1, 2] By its general demurrer the defendant board raises the question that, because the affidavit for the writ alleges that the board has not made a levy and has no money in its hands from which the claim can be paid, the affidavit does not state facts justifying the issuance of the writ, in that it is not also alleged that the levy would not be in excess of the constitutional debt limit of said county. We are of the opinion that the question as to whether the issuance of a warrant in payment of this claim would cause the constitutional debt limit of Edmunds county to be exceeded is a matter of defense, and not a matter required to be negatived in the affidavit for the writ. The cases cited are inapplicable. This claim is not a special indebtedness to be paid out of a special fund or for which a special levy must be made, but payment should be made by a warrant on the general fund of the county. It is a current expense that does not require a specific levy precedent to its payment. Section 13, c. 206, Laws 1913. So

far as counties are concerned, it is only after the constitutional debt limit has been reached that current expenditures must be kept within the current tax levy or revenues for that year. Dring v. St. Lawrence Tp., 23 S. D. 624, 122 N. W. 664; Lawrence v. Meade Co., 10 S. D. 175, 72 N. W. 405; Atty. Gen.'s Opinions, 1913-14, p. 771.

[3] Defendant next urges that there is a defect of parties plaintiff in that either the state treasurer or the assistant executive accountant is a necessary party plaintiff. Section 765, C. C. P., provides that the writ of mandamus must be issued "upon the application of the party beneficially interested." As will hereinafter appear, when the state has paid the claim of the assistant executive accountant, such officer has no further interest in it. The state treasurer, it is true, is the custodian of the funds of the state, but it is the state that is beneficially interested in recovering the amount of the claim from the county. Therefore the state is a proper party plaintiff and the only necessary party plaintiff.

[4] It is next urged that there is a non-joinder of necessary parties defendant. It is first claimed that the members of the county board should have been made defendants by name "as the board of county commissioners of such county." Section 809, Pol. Code, designates these commissioners as the "board of county commissioners." Section 764, C. C. P., authorizes the writ to issue to a "board." We think it unimportant whether the members of the board are brought into the court merely as the "board of county commissioners" or by designating their names as the board of county commissioners. 24 Cyc. 414.

[5] Neither is there any merit in the claim that the state board of equalization (now the state tax commission) is a necessary party. The claim of the state against the county is to be paid by warrant on the county treasurer. It is to be paid out of current revenue as a general claim against the county. No special levy for that particular purpose is contemplated or necessary.

[6] The next four objections of defendant may be considered together. They are:

(1) "That there is no equity in plaintiff's cause, and the relief demanded should not be granted, for the reason that plaintiff has heretofore by uniform taxation throughout the state raised and collected to itself the full amount of moneys claimed to have been

disbursed, as alleged, for the specific purpose mentioned in plaintiff's petition, and that plaintiff has been thereby paid the claim alleged to exist."

(2) "That the tax, the levy of which plaintiff seeks to compel, is for the purpose of general state interest and benefit, for the maintenance of a state office and institution in connection with a current expense in operation of state government, and can only be levied upon all property within the state by a rule of uniform taxation, and not upon the property in the county of Edmunds alone."

(3) "That all property in the county of Edmunds has already paid its share of the expense or claim mentioned in the petition in the levy or collection of those items recited in paragraph 42 of chapter 23, Session Laws 1913, being the General Appropriation Act of that year, and that the imposition of the tax prayed for would compel the property of Edmunds county to bear a second or double taxation for the same purpose."

(4) "That the assessed valuation of the property of Edmunds county in the sum of $17,544,752 bore to the assessed valuation of the property of the state of South Dakota, in the sum of $1,195,-123,854 for the year 1913, 1.47 per cent., which represents the percentage in the sum of $220.50 which said Edmunds county paid to plaintiff in taxation for the year 1913 in contribution to the sum of $15,000 raised by the plaintiff state for the payment of salary and expenses of assistant executive accountants, and that in any event the respondent, defendant, should receive the offset and credit upon plaintiff's claim in said amount of $220.50."

There is no merit to any of these objections. In so far as the labors of the executive accountant and his assistants are confined to the examination of the accounts of state officials, such work is purely of state interest, and is paid for by the several counties in proportion to their assessed valuation by their payments of state taxes. In so far as such officers incur expense in the audit and examination of the accounts of county officials, their labors, while in a sense of state interest, are more particularly of county interest, and it is fair and right that the particular county should ultimately bear the expense, although as between the state and the officer it is paid for out of the state appropriation. It certainly is as much within the power of the Legislature to say that a county shall bear the expense of the examination of the accounts

of its own officers as it is to compel it to bear the expense of maintaining law and order within its boundaries. It certainly would also have been within the power of the Legislature to have dispensed with the provision requiring repayment to the state of the expense of such examination if it had so elected. In State ex rel. Guilbert v. Shumate, 72 Ohio St. 487, 74 N. E. 588, the court, in considering the reimbursement features of the Ohio Accountant Act, said:

"The present act provides for entire uniformity of its operation, the charge for the maintenance of the bureau being upon all the counties of the state in proportion to their population, and that for the auditing being, as provided in the tenth section, the particular expense incurred by the bureau in each examination. The latter section appears to find ample justification in facts which may be presumed, if we may not take notice of instances of their actual occurrence. In some of the counties of the state the public officers elected by the people are so efficient and scrupulous in the conduct of their affairs and in the keeping of their accounts that but little time is required and but little expense incurred in making the examinations by the bureau. Whatever may be the differeneces in this respect in the several counties of the state, they seem to be appropriately met by this section."    . . .

[7] But it is urged that, inasmuch as the county does repay the state, the actual working out of the matter results in a loan of the state funds to the county in violation of the provisions of article 13, § 1, of the Constitution. Without conceding or even intimating that the word "corporation," in this section of the Constitution, refers to a public or quasi public corporation, we are of the opinion that a law which requires a county to reimburse the state for the expenses of a county examination does not come within the purview of that constitutional provision, even if that provision did apply to a public or quasi public corporation. The Legislature might have required each county to pay the expenses of its examination upon the audit of the state auditor, without payment by the state, if it had so elected. In reality the working effect of the act is simply to secure prompt payment to its officers of their expenses and per diem, and is in no sense a loan to a public or quasi public corporation.

[8] Neither does the working effect of this act amount to

double taxation upon the counties examined. The portion of the fund that is used in payment of work done for counties is in theory restored to the state for general purposes, and the amount that would be otherwise required for general state purposes is lessened by that sum. So that, in theory, the county which is examined pays its proportionate share of the expense of the strictly state examinations, and it has in reality contributed for general state purposes, its proportionate share of the appropriation intended primarily for county examinations, but which is actually used for general state purposes. Let us illustrate by taking the appropriation for the year 1913: It amounted to $10,300, of which $7,500 was for the assistant executive accountants and $2,800 for the executive accountant and his expenses. If we assume that the latter sum was expended in purely state examinations, then clearly Edmunds county paid its 1.47 per cent. of that sum, and every other county paid its pro rata share. If we assume that the entire sum of $7,500 was intended for county examinations, and, if we assume that no county examination was held, then at the end of the fiscal year there was in theory an unexpended balance of $7,500, towards which each county paid its proportionate share, for the use of the state for general purposes, and the amount that would otherwise have been required to be levied for state purposes was lessened by that sum. If, on the other hand, this sum was all used for county examinations, and it has been restored to the state by ten counties, then in reality the ten counties have paid the sum of $7,500 for their own examinations, and the amount that they paid in taxes in the first instance towards that $7,500 was not in reality a payment for that purpose, but was a payment into the general fund for general state purposes. If, aside from this sum, the total income from taxation and other sources for 1913 exactly equaled the amount of the appropriations, then there was on hand at the end of the fiscal year 1913 the sum of $7,500 toward the payment of the expenses of the year 1914, of which sum each county of the state contributed its proportionate share. There is therefore no question of double taxation. The ten counties which were examined have simply paid for their own examinations.

[9] It is further urged that plaintiff is not entitled to this writ for the reason that the claims theretofore presented to the defendant board were not verified in the form prescribed by law.

It is true that the form of verification does not strictly follow the requirements of section 861, Pol. Code, as amended by chapter 151, Laws 1913, but the claims showed on their face that they were claims due the state of South Dakota, and specific directions were noted on each to make warrant payable to A. W. Ewert, state treasurer.  If the claims were rejected for that reason, they should have been returned with notice that they were rejected because not properly verified.  People ex rel., etc., v. Delaware Co., 9 Abb. Prac. N. S. (N. Y.) 416.  Surely the courtesy due from one department of the state government to another would require this.  It now being conceded that the claims had been paid by the state before presentation to the county, we do not think the defendant should be allowed to urge the want of proper verification as a defense to the writ, especially in view of the fact, as will hereinafter appear, that defendant had no discretion as to the allowance of the claims, provided they had been paid by the state.  In this connection we may observe that such claims should properly be presented to counties by the state auditor, and it should expressly appear thereon that they have been audited and paid by him.

[10] It is next urged that the title to chapter 206, Laws 1913, violates the provisions of article 3, § 21, of the Constitution.  Under many decisions of this court this contention is clearly without merit.  The title to the act is:

"An act entitled, 'An act to revise chapter 149 of the Laws of 1911, relating to the office of executive accountant, conferring upon him and his assistants additional powers and duties in formulating a uniform system of public accounting, auditing and reporting.' "

This title indicates with sufficient clearness that the act is one which contemplates a uniform system of public accounting and auditing throughout the state.  State v. Kirby, 34 S. D. 281, 148 N. W. 533.

[11, 12] It is finally urged that the defendant board was vested with the discretion of examining into the correctness of the claim, and that, having exercised its power, and having rejected the claim, there is no present remedy, because no appeal was taken from the decision of the board.  It is further contended that, if the state can compel the county to pay such claim without it be-

ing audited by the defendant board, it would amount to the taking of the property of the people of Edmunds county without due process of law, in violation of article 6, § 2, of the Constitution. These objections necessitate a consideration of the provisions of the act and of the power of the Legislature over counties.

The pertinent provisions of the Executive Accountant Act, viz., chapter 206, Laws 1913, are as follows:

"Sec. 7. It shall be the duty of the executive accountant or his assistants, to proceed to the county seat of each county in this state, at irregular periods of at least once in two years, and examine and audit the books and accounts of each officer thereof. * * * Upon request of the board of county commissioners of any county in the state for an examination of county records, other than that provided in this section, or whenever the Governor deems an examination necessary, the executive accountant or his assistants shall proceed to the county seat of such county and examine and audit the books and accounts of such county. * * *

"Sec. 13. The executive accountant shall receive a salary * * * and his assistants shall receive such sum for making county * * * examinations as shall be determined by the Governor of this state, not to exceed the sum of six dollars per day. * * * And the board of county commissioners * * * wherein examination is made shall pay the expenses and per diem of the assistants making the examination * * * which payment shall be made at the first regular or special meeting of the county board * * * after the examination is completed and such per diem and expenses of such assistants shall be paid to the state treasurer and converted into the general fund.

"Sec. 14. All money received by the executive accountant or his assistants in payment of the per diem and expenses, as provided by the preceding section, shall be deposited with the state treasurer to the credit of the general fund. All salaries, per diem and expenses to be paid out on warrants drawn upon the general fund, as provided for by the general appropriation bill."

The general appropriation bill for the period in question, viz., chapter 23, Laws 1913, in section 42 appropriated $7,500 per year for salary and expenses of deputy accountants. Section 43 of that chapter provided the manner of disbursement thereof. Sections 71 and 76, Pol. Code, chapter 189, Laws 1909, and chapter 4,

Laws 1911, further prescribe the duties of the state auditor in relation to the audit and payment of claims. A careful study of the Executive Accountant Act and of the statutes above cited leads us to the conclusion that it is the province of the state auditor to examine, investigate, and audit the claims of the assistant executive accountant, and that, when audited and allowed by him and paid by warrant upon the state treasurer, the sole interest in a claim against the county for recoupment lies in the state. After that time neither the assistant executive accountant nor his superior officer has anything to do with the claim against the county. It is true that the language in the first part of section 14 of the act, viz., "All money received by the executive accountant or his assistants in payment of the per diem and expenses," seems to contemplate the receipt of money by them from the county, but the concluding portion of section 13 of the act provides that the per diem and expenses shall be paid by the county to the state treasurer and converted into the general fund. And the concluding portion of section 14 clearly contemplates payment by the state in the first instance of the claims of assistant executive accountants for per diem and expenses in the examination and audit of county accounts. The words "per diem" in this act refer alone to the assistants; the chief officer gets a salary. In the language of Mr. Justice McKenna, in United States, for the Use, etc., v. N. Y. Steam Fitting Co., 235 U. S. 327, 35 Sup. Ct. 108, 59 L. ed. 253:

"Some of the provisions of the act, as we have intimated, must give way. We can only select those which we consider the fittest to prevail to accomplish the purposes of the statute."

The only way we can reconcile the quoted words in section 14 with the other provisions of the act is to treat the executive accountant or his assistant, in so receiving the money, merely as a means of transfer or conduit from the county or other taxing district to the state treasury. Such officers have no right to receive the money in the sense that they may treat it as their own, even temporarily. The underlying import of sections 13 and 14 of the act, in connection with the other sections of statute referred to, is that the state auditor is made the auditing officer in determining the correctness of the claims for per diem and expenses of the assistant executive accountant, and that, when so audited and paid, the county board has no discretion as to whether it

will or will not pay the same. When the fact is properly brought to its attention that such claim has been allowed and paid by the state, it is the duty of the county board to cause its warrant to be issued in favor of the state for the amount so allowed. But it is urged that this denies due process of law to the county. In answer to that we may observe that a county is merely a governmental subdivision of the state. In Stuart v. Kirley, 12 S. D. 245, 81 N. W. 147, this court said:

"It is too well settled to require the citation of authorities that counties are local subdivisions of the state for governmental purposes, created by the sovereign power of the state, without the consent or concurrent action of the people who inhabit them."

See, also, note 68 Am. Dec. 298, 11 Cyc. 341.

There is nothing in the Constitution that limits the authority of the Legislature relative to the fiscal affairs of counties. Indeed, article 9, § 6, authorizes the Legislature to provide for such county officers as it may deem necessary and to prescribe their duties and compensation. Nor does article 9, § 7, of the Constitution militate against the authority of the Legislature. While it is true that county officers must be electors of the county, yet the Legislature has the power to say what the duties of the county officers shall be. If it chooses to lay upon a state officer certain duties that might have been laid upon the officers of the county, that is solely a matter of legislative policy. While, generally speaking, the Legislature has made the county board the fiscal manager of the county, it has made exceptions thereto in addition to that made in the present statute. By section 669, Pol. Code, the per diem of the court stenographer is to be "audited and paid by the county * * * upon the order of the judge." If the county board neglects to do the things required of it by section 846, Pol. Code, the court may order it done, "and the expense incurred by him in carrying the order into effect when certified by the court shall be a county charge."

Section 887, Pol. Code, expressly recognizes the fact that the power of auditing and allowing claims against counties is not confined to the county commissioners. It provides:

"No claim against the county shall be paid otherwise than up on the allowance of the county commisisoners * * * except it is authorized to be fixed by some other person or tribunal, in

which case the sum shall be paid upon the warrant of the county auditor, upon the proper certificate of the person or tribunal allowing the same."

In Ex parte Widber, 91 Cal. 367, 27 Pac. 733, the audit by the judge of the superior court of a claim for providing suitable rooms and furniture, stationery, etc., for the use of the court was sustained as being a direct liability against the county enforceable by mandamus. In Jones v. Board of Supervisors (Miss.) 12 South. 341, it was held that a claim for furniture purchased for a court should have been audited by the court and "certified to the board of supervisors, not for revision or correction or allowance, but that a warrant may issue to the county treasurer." In State ex rel. Lindabury v. Board, 47 N. J. Law, 417, 1 Atl. 701, it was held that the audit by the court of a claim for fees of an associate counsel employed by the public prosecutor was binding upon the county board and mandamus issued. In Baldwin v. Board, 58 N. J. Law, 285, 33 Atl. 197, it was held that the costs of an investigation ordered by the Chief Justice were to be audited by the Chief Justice, and not by the county board. See, also, Lyman County v. State, 9 S. D. 413, 69 N. W. 601; Morgan v. State, 11 S. D. 396, 78 N. W. 19; Gilmore v. Penobscot Co., 107 Me. 345; 78 Atl. 454; Mayor v. Keeley Institute, 81 Md. 106, 31 Atl. 437; Bryant v. Palmer, 152 N. Y. 412, 46 N. E. 851.

We therefore conclude that the county, being merely a governmental subdivision of the state, is not deprived of any of its constitutional rights by statutes which make the state auditor the auditing officer of the acounts in question, and that, as the county board has no discretion in the matter, its rejection of the claims amounted to nothing, and that mandamus is the proper remedy. It may with propriety be pointed out that, if a false claim was paid by the state for a county examination, it would be the duty of the state, under the provisions of section 4, c. 4, Laws 1911, to cause restitution to be made to the state, and there can be no doubt but that in such case it would be the further duty of the state to restore to the county, which has paid to the state the full amount of the false claim, the amount recovered.

The plaintiff is entitled to a peremptory writ of mandamus requiring the defendant board to cause a county warrant to be is-

sued to the state in the sum of $891.23, with interest from January 9, 1914.